Taylor Profita, *Pro Per*

8501 E Alameda Ave
Denver, CO 80230

Phone: 818-523-9807
Fax: 818-698-0487
tprofita@gmail.com

**FILED**

Feb 28, 2018

CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY _Nancy Boehme_
Deputy Clerk, U.S. District Court

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR PROFITA.<br>        Plaintiff<br><br>        v.<br><br>STEPHEN ANDERSEN,<br>KATHLEEN BRANDT,<br>JOHN BELCHER,<br>WILLIAM BARRY,<br>LOS ANGELES SUPERIOR COURT<br>        Defendants | Case No.: 2:18-cv-00286-PA-DFM<br><br>Hon. Percy Anderson<br>Hon. Douglas F. McCormick<br><br>REQUEST FOR JUDICIAL NOTICE |

**Request for Judicial Notice**

Plaintiff Taylor Profita respectfully requests that this court take judicial notice of the following generally and in consideration of Mr. Belcher's Motion for Dismissal:

On February 26th, Profita received notice from the clerk of department 67 of the Los Angeles Superior Court, that his requests for Judicial Notice in that court were granted. This notice is attached hereto as Exhibit 1.

This notice granted all requests for Judicial Notice based on issues that have arisen in the proceedings of BP099392 in that court, including the following:

That John Belcher, counsel and party in interest in those proceedings, has continued in perpetuating a fraud upon that court, seeking to satisfy a judgment in department 44 of the Los Angeles Superior Courts despite

knowing that the judgment had already been satisfied in Department 67. [Exhibit 2]

That all actions taken against Hunt based on the assertions of forgery and other specific intent crimes, including unlawful concealment and other misconduct, were entered in violation of California's legal code. entered in violation of her due process rights, and void. [Exhibit 3]

That the order of December 11th, 2017, and the sanctions issued against Profita by William Barry therein, are void based on Mr. Barry's failure to adhere to the mandates of CCP 128.5, the statute under which the sanctions were issued. [Exhibit 3]

That Profita's rights to petition the court pertaining to the Andersen Family Trust were established, inter alia, in 2008, with the grant assignment of rights to him. [Exhibit 4]

Profita would request this court take notice both of these same facts, as well as that the Los Angeles Superior Court, Department 67, has taken judicial notice of these facts.


Respectfully Submitted, February 27th, 2018            /s/ Taylor Profita
                                                       Taylor Profita


REQUEST FOR JUDICIAL NOTICE - 2

# Exhibits

Exhibit 1 – Notice Entry of Court Order of Department 67 of the Los Angeles Superior Court of February 20th, 2018 Granting Profita's Requests for Judicial Notice, with Exhibits

Exhibit 2 – Profita's Request for Judicial Notice Pertaining to the Fraud of John Belcher in Seeking to Satisfy a Judgment in Department 44 which had already been satisfied in Department 67 w/Exhibits

Exhibit 3 – Profita's Request for Judicial Notice pertaining to the actions in penalizing Pauline Hunt for alleged violation of California law and misconduct, when she was specifically found not to have violated California Code , Recognition of the satisfaction of the judgement in favor of John Belcher in light of his attempt to further defraud Profita by seeking to have the same judgment subsequently satisfied in another courtroom, and that the Order of December 11th, 2017, is void in its entirety w/Exhibits

Exhibit 4 – Profita's Request for Judicial Notice Pertaining to the Grant Assignment of August, 2008 w/Exhibits

Exhibit 1 – Notice Entry of Court Order of Department 67 of the Los Angeles Superior Court of February 20th, 2018 Granting Profita's Requests for Judicial Notice w/Exhibits

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF *LOS ANGELES*
## Probate Division
### Stanley Mosk Dept. - 67,

**BP099392**
**In re: ANDERSEN, WAYNE ET AL - TRUST**

February 20, 2018
*1:30 PM*

I, SHERRI R. CARTER, Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Entry of the above minute order of February 20, 2018 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States Mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Dated: February 20, 2018

By:  /s/ Corrina Ornelas
Corrina Ornelas, Deputy Clerk

Taylor Profita
8501 E. Alameda Ave
Denver, CO  80230

Nicholas W. Song, Attorney
Law Offices of John A. Belcher
150 East Colorado Boulevard, Suite 215
Pasadena, CA  91105

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS *ANGELES*
## Probate Division
### Stanley Mosk Dept. - 67,

**BP099392**
*In re:* ANDERSEN, WAYNE ET AL - TRUST

**February 20, 2018**
*1:30 PM*

Honorable Daniel Juarez, Judge

Corrina Ornelas, Judicial Assistant

---

**NATURE OF PROCEEDINGS:**  Court Order Hearing  -  regarding Requests for Judicial Notice
The following parties are present for the aforementioned proceeding:

No appearances.

Out of the presence of the court reporter, the Court makes the following findings and orders:

The Court reviews the contents of the case including the following:

*Stephen Andersen's* and Kathleen Brandt's Request for Judicial Notice in Support of Motion for an Order Directing Trustee to Distribute Funds Probate Code Section 1310 filed on January 8, 2018 by Attorney Nicholas W. Song on behalf of the Petitioners.

Request for Judicial Notice of Complaint for Injunctive Relief, Declaratory Relief, and Damages filed on January 17, 2018 by Taylor Profita, real party in interest, Pro Per.

Request for Judicial Notice of attempt to recover on the Judgment in the proceedings of BC471602 filed on January 29, 2018 by Taylor Profita, real party in interest, Pro Per.

Request for Judicial Notice of Grant and Assignment dated August 7, 2008 filed on February 7, 2018 by Taylor Profita, real party in interest, Pro Per.

Request for Judicial Notice of legal points filed on February 13, 2018 by Taylor Profita, real party in interest, Pro Per.

The Court considered all the Requests for Judicial Notice after the February 14, 2018 hearing, as they were not put in front of the Court properly through no fault of the parties.  All Requests for Judicial Notice are granted. The granting of the Judicial Notice did not modify the Court's ruling.

The Court orders the Clerk to give notice.

## CLERK'S CERTIFICATE OF MAILING/
## NOTICE OF ENTRY OF ORDER

---

Exhibit 2 – Profita's Request for Judicial Notice Pertaining to the Fraud of John Belcher in Seeking to Satisfy a Judgment in Department 44 which had already been satisfied in Department 67 w/Exhibits

Electronically FILED by Superior Court of California, County of Los Angeles 1/29/2018 8:00 AM Sherri R. Carter, Executive Officer/Clerk, By J. Gnade, Deputy Clerk

Case 2:18-cv-00286-PA-DFM   Document 17   Filed 02/28/18   Page 8 of 84   Page ID #:505

Taylor Profita, *real party in interest, Pro Per*
8501 E Alameda Ave
Denver, CO 80230
Phone: 818-523-9807
Fax: 818-698-0487
tprofita@gmail.com

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE | Case No.: BP099392 |
| THE ANDERSEN FAMILY TRUST DATED JULY 16, 1993 AS AMENDED | Consolidated with BP110256 |
| | REQUEST FOR JUDICIAL NOTICE |

Petitioner and Beneficiary Taylor Profita respectfully requests that this court take Judicial Notice that on April 20th, 2018, John Belcher has scheduled an Order to Appear for Examination, requiring Taylor Profita to appear before department 44 at 8:30 to furnish information in aid of enforcement of the money judgment against Profita in the proceedings of BC471602, the same judgment that was satisfied through the order of this court of September 25th, 2018.

Mr. Belcher is thus seeking the court in the proceedings of BC471602 grant the same relief this court has already granted, namely that of the order of September 25th, 2017 (Exhibit 1), which granted Mr. Belcher's petition to utilize the funds owed to Hunt in the distribution from the trust to fully satisfy the judgment against Hunt and Profita in the proceedings of BC471602, as Mr. Belcher identified in his December 11th, 2017 Declaration of John Belcher in Support of Motion for an Order Directing Trustee to Distribute Funds (Exhibit 2), wherein he specifically identified that the relief he sought from the court in these proceedings was the satisfaction of the judgment of the court in the proceedings of BC471602, namely the judgment identified in Paragraph 12 pertaining to his SLAPP motion in the proceedings of BC471602.

Mr. Belcher has thus fraudulently continued to seek relief in the proceedings of BC471602, which has already been knowingly granted and satisfied through Mr. Belcher's petitions and this courts orders in the proceedings of BP099392.

The Order to Appear for Examination is attached hereto as Exhibit 3.

Respectfully Submitted, January 29th, 2018

/s/ Taylor Profita
Taylor Profita

REQUEST FOR JUDICIAL NOTICE - 1

# Exhibits

Exhibit 1 - Order of September 1st, 2017

Exhibit 2 - December 11th, 2017 Declaration of John Belcher in Support of Motion for an Order Directing Trustee to Distribute Funds

Exhibit 3 - Order to Appear for Examination to Taylor Profita on April 20th, 2018

Exhibit 1 - Order of September 1st, 2017

1    **LAW OFFICES OF JOHN A. BELCHER**
     **JOHN A. BELCHER (SBN 99300)**
2    **NICHOLAS W. SONG (SBN 217070)**
     150 East Colorado Boulevard, Suite 215
3    Pasadena, California 91105
     (626) 577-5771
4    (626) 577-7769 Facsimile

5    Attorneys for Stephen Andersen and Kathleen Brandt

6

**FILED**
Superior Court of California
County of Los Angeles

SEP 2 5 2017

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
         Viola Sigers

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                   **FOR THE COUNTY OF LOS ANGELES**

9

10   IN RE                                    **CASE NO. BP099392**
                                              Consolidated with BP110256
11
                                              [AMENDED PROPOSED] ORDER        9/25/17
12   **THE ANDERSEN FAMILY TRUST**            DIRECTING THE TRUSTEE TO MAKE   WB
     **DATED JULY 16, 1992 AS**               A FINAL DISTRIBUTION
13   **AMENDED.**
                                              Hon. William Barry
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Amended Proposed] Order re Final Distribution

1   Stephen Andersen's and Kathleen Brandt's Petition to Compel Successor Trustee to

2   Distribute Trust Funds came on for hearing on ~~May 12, 2017~~ 9/25/17, in Department 67 of the Los Angeles

3   Superior Court. Petitioners Stephen Andersen and Kathleen Brandt and Objector Pauline Hunt

4   appeared by their respective counsel.

5   The Court, having considered the documents before it, having heard the arguments of

6   counsel, and being fully advised, GRANTS the Petition as follows:

7   IT IS ORDERED, ADJUDGED, AND DECREED that:

8   1.   Sunny Asch, as Successor Trustee of the Andersen Family Trust, dated July 16, 1992, as

9   amended, on January 24, 2017, shall pay forthwith the following:

10   a.  To Pauline Hunt as a beneficiary of the Andersen Family Trust: the principal sum of

11   $267,159.26, calculated as follows:

| | |
|---|---|
| $1,034,140.69 | 60% of Andersen Family Trust |
| $ (54,465.22) | 40% of principal ($136,163.05) diverted by Pauline Hunt from Trust |
| $ (73,306.26) | Interest on the amount diverted by Pauline Hunt from Trust (up to 8/3/10), as calculated by Judge Arnold H. Gold (Exhibit A, Pages 22-23, Line 15-Line 2) |
| $ (95,873.71) | Interest on the amount diverted by Pauline Hunt from Trust (8/3/10 to 8/16/17) |
| $ (77,804.89) | 40% of principal ($194,512.23) diverted by Pauline Hunt from Estate of Wayne Andersen |
| $ (85,901.51) | Interest on the amount diverted by Pauline Hunt from Estate of Wayne Andersen (up to 8/3/10), as calculated by Judge Arnold H. Gold (Exhibit A, Page 23, Line 8-13) |
| $ (136,957.93) | Interest on the amount diverted by Pauline Hunt from Estate of Wayne Andersen (8/3/10 to 8/16/17) |
| $ (86,899.56) | Amount diverted by Pauline Hunt from Stephen Andersen and Kathleen Brandt (renewed 10/15/12, Exhibit C) |

-1-

[Amended Proposed] Order re Final Distribution

| 1 | $ (42,045.10) | Interest on the amount diverted by Pauline Hunt from |
| 2 | | Stephen Andersen and Kathleen Brandt (renewed |
| 3 | | 10/15/12) |
| 4 | $ (60,783.49) | Judgment Creditor John Belcher (principal, 1/11/2013, |
| 5 | | Exhibit B) |
| 6 | $ (27,943.75) | Interest on Judgment to John Belcher (1/11/13 to 8/16/17) |
| 7 | $ 267,159.26 | **Total** |

b. To Stephen Andersen and Kathleen Brandt the principal sum of $1,033,519.17, calculated as follows:

| | $ 689,427.12 | 40% of Andersen Family Trust |
| | $ 54,465.22 | 40% of principal ($136,163.05) diverted by Pauline Hunt |
| | | from Trust |
| | $ 73,306.26 | Interest on the amount diverted by Pauline Hunt from Trust |
| | | (up to 8/3/10), as calculated by Judge Arnold H. Gold |
| | | (Exhibit A, Pages 22-23, Line 15-Line 2) |
| | $ 95,873.71 | Interest on the amount diverted by Pauline Hunt from Trust |
| | | (8/3/10 to 8/16/17) |
| | $ 77,804.89 | 40% of principal ($194,512.23) diverted by Pauline Hunt |
| | | from Estate of Wayne Andersen |
| | $ 85,901.51 | Interest on the amount diverted by Pauline Hunt from |
| | | Estate of Wayne Andersen (up to 8/3/10), as calculated by |
| | | Judge Arnold H. Gold (Exhibit A, Page 23, Line 8-13) |
| | $ 136,957.93 | Interest on the amount diverted by Pauline Hunt from |
| | | Estate of Wayne Andersen (8/3/10 to 8/16/17) |
| | $ 86,899.56 | Amount diverted by Pauline Hunt from Stephen Andersen |
| | | and Kathleen Brandt (renewed 10/15/12) |

-2-
[Amended Proposed] Order re Final Distribution

1        $ 42,045.10        Interest on the amount diverted by Pauline Hunt from

2                                    Stephen Andersen and Kathleen Brandt (renewed

3                                      10/15/12)

4        $ (259,162.13)      Payment to John Andersen

5        $ 1,033,519.17      **Total**

6

7      c. To John Belcher the principal sum of $88,727.24, calculated as follows:

8        $ 60,783.49       Judgment Creditor John Belcher (Exhibit B)

9        $ 27,943.75       Interest on Judgment to John Belcher

10       $ 88,727.24       **Total**

11

12      d. To Sunny Asch as Successor Trustee of the Andersen Family Trust as fees and costs:

13  $10,000.00.

14

15

16

17  DATED:                                                          *see last page*

18                          HON. WILLIAM BARRY
                            JUDGE OF THE SUPERIOR COURT

19

20

21

22

23

24

25

26

27

28

Exhibit 2 - December 11th, 2017 Declaration of John
Belcher in Support of Motion for an Order Directing
Trustee to Distribute Funds

1   **LAW OFFICES OF JOHN A. BELCHER**
    **JOHN A. BELCHER (SBN 99300)**
2   **NICHOLAS W. SONG (SBN 217070)**
    **150 East Colorado Boulevard, Suite 215**
3   **Pasadena, California  91105**
    **(626) 577-5771**
4   **(626) 577-7769 Facsimile**

5   **Attorneys for Stephen Andersen and Kathleen Brandt**

6

7           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8               **FOR THE COUNTY OF LOS ANGELES**

9

10  **IN RE**                              **CASE NO. BP099392**
                                           **Consolidated with BP110256**
11
    **THE ANDERSEN FAMILY TRUST**          **DECLARATION OF JOHN A. BELCHER**
12  **DATED JULY 16, 1992 AS AMENDED.**    **IN SUPPORT OF MOTION**
                                           **FOR AN ORDER DIRECTING**
13                                         **TRUSTEE TO DISTRIBUTE FUNDS**
                                           **[PROBATE CODE §1310]**
14
                                           **DATE:    January 11, 2018**
15                                         **TIME:    10:00 a.m.**
                                           **PLACE:  Dept. 67**
16
                                           **Hon. William Barry**
17

18

19

20

21

22

23

24

25

26

27

28

                        Declaration of John A. Belcher

1    I, John A. Belcher, declare:

2    1. I am counsel for Stephen Andersen and Kathleen Brandt.

3    2. This case was filed more than eleven years ago, on July 11, 2006. Pauline Hunt was

4    removed as trustee for cause in April 2009. Attached as Exhibit A is a true and correct copy of

5    Judge Kenji Machida's Order re Successor Trustee and Supplemental Accounting, dated April 15,

6    2009.

7    3. Hunt has been subject to a freeze order for since 2009. On April 15, 2009, Judge

8    Machida entered an order stating, in part, the following:

9

10       6. Pauline Hunt, her agents, attorneys, and representatives are enjoined and

11           restrained from causing, suffering or permitting any transfer,

12           hypothecation or assignment of any interest in the proceeds of the Joint

13           Tenancy Accounts, wherever located and however title is held.

14

15   Exhibit A.

16   4. Judge Machida also ordered Hunt to "render an accounting of the disposition of all

17   proceeds from the Joint Tenancy Account by May 15, 2009." Exhibit A, paragraph 5. Pauline

18   Hunt, however, never provided an accounting as required in the Order.

19   5. Attached as Exhibit D is a true and correct copy of Tentative Statement of Decision -

20   Phase 2, which was subsequently adopted as final. Attached as Exhibit C is a true and correct copy

21   of Judge Kenji Machida's Declaratory Judgment, filed October 15, 2009.

22   6. In the Statement of Decision and in the Declaratory Judgment, Judge Machida found that

23   Pauline Hunt diverted funds from my father Wayne Andersen while he was incapacitated from a

24   stroke, and was tied down with a feeding tube. Judge Machida also found that Hunt was lying, and

25   that she had diverted funds from the Andersen Family Trust and the Estate of Wayne Andersen.

26   7. In August 2010, the amounts diverted by Hunt were determined by Judge Arnold Gold,

27   Special Referee. Attached as Exhibit E is a true and correct copy of the First Report and

28   ///

1    Recommendations of Successor Referee; Order Thereon. This Report was signed by Judge

2    Mitchell Beckloff. See page 25.

3        8. On May 12, 2017, this Court held an evidentiary hearing regarding the amounts to be

4    distributed to the beneficiaries of the Andersen Family Trust. On September 25, 2017, this Court

5    issued an order directing the Trustee to distribute the funds. This Court's September 25, 2017

6    order, however, has not been carried out because of delaying tactics by Pauline Hunt, who has

7    recently filed two appeals.

8        9. Throughout the eleven years of litigation, Pauline Hunt, Taylor Profita and their

9    attorneys Marc Hankin and Richard Pech, have taken steps designed to prolong this case and delay

10   distribution. It is clear to me that they will continue to advance baseless motions with the intent to

11   delay distribution.

12       10. Practically every medical and financial document produced by Hunt was pursuant to a

13   motion to compel. Pauline Hunt was caught attempting to hide evidence in this case. Judge Aviva

14   Bobb imposed an issue sanction on Pauline Hunt for concealing the existence of the UBS Paine

15   Webber account. At the hearing, Judge Bobb dismissed Hunt's attorney Richard Pech's denial of

16   concealment with the comment, **"I feel like you're in 'Alice in Wonderland' here**." The Court

17   also imposed monetary sanctions.

18       11. Marc Hankin also increased the cost of this lawsuit by failing to appear at multiple

19   hearings, which led to numerous continuances. Judge Bobb sanctioned Marc Hankin for noticing,

20   but failing to attend or take off calendar, eight separate ex parte applications.

21       12. On October 17, 2011, Taylor Profita and Pauline Hunt brought a malicious prosecution

22   lawsuit against me. <u>Taylor Profita, et. al. v. Belcher, et al.</u>, LASC Case No. BC 471602. On a

23   SLAPP motion, Judge Charles F. Palmer found that this action was filed with probable cause. The

24   SLAPP motion to strike was granted and attorneys fees and costs of $60,783.49 were awarded

25   against Taylor and Pauline, jointly and severally. Pauline Hunt and Taylor Profita never paid this

26   judgment.

27       13. Hunt has filed a notice of appeal regarding this Court's denial of her petition for

28   attorneys fees. That petition had been filed eight years after she was removed as trustee for cause.

1  This late filing is yet another part of Hunt's practice of obstruction and delays which has delayed the

2  distribution of funds despite liability being established in 2009.

3      14. Currently pending before this Court is Taylor Profita's "Motion for Recovery of Trust

4  Assets and CCP [sic] 496(c) Relief," set to be heard on January 12, 2018. In that motion, Profita

5  claims that Stephen Andersen and Kathleen Brandt "stole" the life insurance proceeds by obtaining

6  a judicial determination that they are entitle to those proceeds. This claim is patently frivolous. As

7  an initial matter, Andersen and Kathleen never received the proceeds because Hunt caused the

8  insurance proceeds to be paid to herself. It is also patently frivolous to argue that one can "convert"

9  an asset by obtaining a judicial determination of its ownership. Of note, the Court of Appeal in this

10  case had affirmed the trial court's determination that Wayne Andersen lacked capacity to change the

11  life insurance beneficiary to Hunt. "We also determine there is substantial evidence that Wayne

12  lacked capacity to open joint tenancy accounts and to change the beneficiary of his life insurance

13  policy." Andersen v. Hunt, 196 Cal.App.4th 722, 725 (2011).

14      15. Attached as Exhibit B is a true and correct copy of Affidavit by Taylor Profita in

15  Support of Petition for Guardian Ad Litem, served on petitioners by Profita. Profita stated that

16  Hunt suffered a respiratory failure and requires the use of a ventilator. She is "not able to

17  communicate beyond a few words and her most basic wishes." Exhibit B.

18      I declare the foregoing to be true and correct of my own personal knowledge under penalty

19  of perjury under the laws of the State of California. If called to testify thereto I could and would so

20  testify.

21      Executed this /(__ th day of December 2017, at Pasadena, California.

22

23                     JOHN A. BELCHER

24

25

26

27

28

-3-

Declaration of John A. Belcher

Exhibit 3 - Order to Appear for Examination to Taylor Profita on April 20th, 2018

**AT-138/EJ-125**

| | | |
|---|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:  STATE BAR NO.: 99300 | | FOR COURT USE ONLY |

ATTORNEY OR PARTY WITHOUT ATTORNEY:   STATE BAR NO.: 99300
NAME: John A. Belcher
FIRM NAME: Law Offices of John Belcher
STREET ADDRESS: 150 East Colorado Boulevard, Suite 215
CITY: Pasadena   STATE: CA   ZIP CODE: 91105
TELEPHONE NO.: 626-577-5771   FAX NO.: 626-577-7769
E-MAIL ADDRESS: johnbelcher@insuringlaw.com
ATTORNEY FOR (name): Defendant John Belcher

*Received*
*JAN 19 2018*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk

PLAINTIFF Taylor Profita and Pauline Hunt
DEFENDANT John Belcher

| APPLICATION AND ORDER FOR APPEARANCE AND EXAMINATION | CASE NUMBER: |
|---|---|
| [x] ENFORCEMENT OF JUDGMENT  [ ] ATTACHMENT (Third Person)  [x] Judgment Debtor  [ ] Third Person | BC471602 |

### ORDER TO APPEAR FOR EXAMINATION

1. TO (name): Taylor Profita
2. YOU ARE ORDERED TO APPEAR personally before this court, or before a referee appointed by the court, to
   a. [x] furnish information to aid in enforcement of a money judgment against you.
   b. [ ] answer concerning property of the judgment debtor in your possession or control or concerning a debt you owe the judgment debtor.
   c. [ ] answer concerning property of the defendant in your possession or control or concerning a debt you owe the defendant that is subject to attachment.

Date: 4/20/2018   Time: 8:30am   Dept. or Div.: 44   Rm.:
Address of court [x] is shown above [ ] is: (Res. ID: 18011)

3. This order may be served by a sheriff, marshal, registered process server, or the following specially appointed person (name):

Date: _____

_____
JUDGE

| This order must be served not less than 10 days before the date set for the examination. |
|---|

## IMPORTANT NOTICES ON REVERSE

### APPLICATION FOR ORDER TO APPEAR FOR EXAMINATION

4. [x] Original judgment creditor   [ ] Assignee of record   [ ] Plaintiff who has a right to attach order applies for an order requiring (name):   Taylor Profita
   to appear and furnish information to aid in enforcement of the money judgment or to answer concerning property or debt.

5. The person to be examined is
   a. [x] the judgment debtor.
   b. [ ] a third person (1) who has possession or control of property belonging to the judgment debtor or the defendant or (2) who owes the judgment debtor or the defendant more than $250. An affidavit supporting this application under Code of Civil Procedure section 491.110 or 708.120 is attached.

6. The person to be examined resides or has a place of business in this county or within 150 miles of the place of examination.

7. [ ] This court is **not** the court in which the money judgment is entered or (attachment only) the court that issued the writ of attachment. An affidavit supporting an application under Code of Civil Procedure section 491.150 or 708.160 is attached.

8. [ ] The judgment debtor has been examined within the past 120 days. An affidavit showing good cause for another examination is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 1/15/2018

John Belcher
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

(Continued on reverse)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use  Judicial Council of California  AT-138/EJ-125 [Rev. January 1, 2017] | **APPLICATION AND ORDER FOR APPEARANCE AND EXAMINATION** (Attachment—Enforcement of Judgment) | Page 1 of 2  Code of Civil Procedure, §§ 491.110, 708.110, 708.120, 708.170  www.courts.ca.gov |

AT-138/EJ-125

### Information for Judgment Creditor Regarding Service

If you want to be able to ask the court to enforce the order on the judgment debtor or any third party, you must have a copy of the order personally served on the judgment debtor by a sheriff, marshal, registered process server, or the person appointed in item 3 of the order at least 10 calendar days before the date of the hearing, and have a proof of service filed with the court.

## IMPORTANT NOTICES ABOUT THE ORDER

### APPEARANCE OF JUDGMENT DEBTOR (ENFORCEMENT OF JUDGMENT)

NOTICE TO JUDGMENT DEBTOR  If you fail to appear at the time and place specified in this order, you may be subject to arrest and punishment for contempt of court, and the court may make an order requiring you to pay the reasonable attorney fees incurred by the judgment creditor in this proceeding.

### APPEARANCE OF A THIRD PERSON (ENFORCEMENT OF JUDGMENT)

(1) NOTICE TO PERSON SERVED  If you fail to appear at the time and place specified in this order, you may be subject to arrest and punishment for contempt of court, and the court may make an order requiring you to pay the reasonable attorney fees incurred by the judgment creditor in this proceeding.

(2) NOTICE TO JUDGMENT DEBTOR  The person in whose favor the judgment was entered in this action claims that the **person to be examined under this order has possession or control of property that is yours or owes you a debt. This property or debt is as follows** *(describe the property or debt)*:

If you claim that all or any portion of this property or debt is exempt from enforcement of the money judgment, you must **file your exemption claim in writing with the court and have a copy personally served on the judgment creditor not later than three days before the date set for the examination.** You must appear at the time and place set for the examination to establish your claim of exemption or your exemption may be waived.

### APPEARANCE OF A THIRD PERSON (ATTACHMENT)

NOTICE TO PERSON SERVED   If you fail to appear at the time and place specified in this order, you may be subject to arrest and punishment for contempt of court, and the court may make an order requiring you to pay the reasonable attorney fees incurred by the plaintiff in this proceeding.

### APPEARANCE OF A CORPORATION, PARTNERSHIP, ASSOCIATION, TRUST, OR OTHER ORGANIZATION

It is your duty to designate one or more of the following to appear and be examined: officers, directors, managing agents, or other persons who are familiar with your property and debts.

 **Request for Accommodations.** Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least 5 days before your hearing. Contact the clerk's office for *Request for Accommodation* (form MC-410). (Civil Code, § 54.8.)

AT-138/EJ-125 [Rev. January 1, 2017]

**APPLICATION AND ORDER FOR
APPEARANCE AND EXAMINATION**
(Attachment—Enforcement of Judgment)

Page 2 of 2

THIS IS YOUR CRS RECEIPT

| INSTRUCTIONS |
| --- |
| Please print this receipt and attach it to the corresponding motion/document as the last page. Indicate the Reservation ID on the motion/document face page (see example). The document will not be accepted without this receipt page and the Reservation ID. |

AL IFORNIA, COUNTY OF LOS ANGELES

CASE NO.: BC900000

NOTICE OF MOTION AND MOTION
TO COMPEL ANSWERS TO FORM
INTERROGATORIES

DATE: January 1, 2020
TIME: 2 p.m.
DEPT: 1
RES ID: 131112001085

*SAMPLE*

RESERVATION INFORMATION

Reservation ID:            **180115281540**
Transaction Date:        January 15, 2018

Case Number:            BC471602
Case Title:                TAYLOR PROFITA ET AL VS JOHN A BELCHER ET AL
Party:                        BELCHER JOHN A. (Defendant & Defendant in Pro Per)

Courthouse:              Stanley Mosk Courthouse
Department:              44
Reservation Type:       Application for Order for Appearance and Examination
Date:                        4/20/2018
Time:                        08:30 am

FEE INFORMATION (Fees are non-refundable)

First Paper Fee:     Party asserts first paper was previously paid.

| Description | Fee |
| --- | --- |
| Application for Order for Appearance and Examination | $60.00 |
| Total Fees:                    Receipt Number: 1180115K0529 | $60.00 |

PAYMENT INFORMATION

Name on Credit Card:        John Belcher
Credit Card Number:         XXXX-XXXX-XXXX-9536

**A COPY OF THIS RECEIPT MUST BE ATTACHED TO THE CORRESPONDING MOTION/DOCUMENT AS THE LAST PAGE AND THE RESERVATION ID INDICATED ON THE MOTION/DOCUMENT FACE PAGE.**

THIS IS YOUR CRS RECEIPT

| INSTRUCTIONS |
|---|
| Please print this receipt and attach it to the corresponding motion/document as the last page. Indicate the Reservation ID on the motion/document face page (see example). The document will not be accepted without this receipt page and the Reservation ID. |

ALIFORNIA, COUNTY OF LOS ANGELES

CASE NO.: BC00X00

NOTICE OF MOTION AND MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES

DATED      11..AM 2020
TIME       2: 0 pm
DEPT
CRS ID: 131112001085

## RESERVATION INFORMATION

| | |
|---|---|
| Reservation ID: | **180115281540** |
| Transaction Date: | January 15, 2018 |
| | |
| Case Number: | BC471602 |
| Case Title: | TAYLOR PROFITA ET AL VS JOHN A BELCHER ET AL |
| Party: | BELCHER JOHN A. (Defendant & Defendant in Pro Per) |
| | |
| Courthouse: | Stanley Mosk Courthouse |
| Department: | 44 |
| Reservation Type: | Application for Order for Appearance and Examination |
| Date: | 4/20/2018 |
| Time: | 08:30 am |

## FEE INFORMATION (Fees are non-refundable)

First Paper Fee:    Party asserts first paper was previously paid.

| Description | Fee |
|---|---|
| Application for Order for Appearance and Examination | $60.00 |
| Total Fees: | Receipt Number: 1180115K0529 | $60.00 |

## PAYMENT INFORMATION

| | |
|---|---|
| Name on Credit Card: | John Belcher |
| Credit Card Number: | XXXX-XXXX-XXXX-9536 |

## A COPY OF THIS RECEIPT MUST BE ATTACHED TO THE CORRESPONDING MOTION/DOCUMENT AS THE LAST PAGE AND THE RESERVATION ID INDICATED ON THE MOTION/DOCUMENT FACE PAGE.

## National Process

| | |
|---|---|
| **From:** | DONOTREPLY-CRS@lacourt.org |
| **Sent:** | Wednesday, January 24, 2018 4:27 PM |
| **To:** | johnbelcher@insuringlaw.com |
| **Subject:** | Confirmation: BC471602-180115281540 |

Your motion has been received and processed in the courtroom. As a result, the following reservation has been confirmed:

| | |
|---|---|
| Reservation ID: | 180115281540 |
| Case Number: | BC471602 |
| Case Title: | TAYLOR PROFITA ET AL VS JOHN A BELCHER ET AL |
| Party: | BELCHER JOHN A. (Defendant & Defendant in Pro Per) |
| Courthouse: | Stanley Mosk Courthouse |
| Dept: | 44 View Courtroom Information. |
| Reservation Type: | **Application for Order for Appearance and Examination** |
| Date: | 4/20/2018 |
| Time: | 08:30 am |

Please do not reply to this email. Replies to this email will not be read.

1

Exhibit 3 – Profita's Request for Judicial Notice pertaining to the actions in penalizing Pauline Hunt for alleged violation of California law and misconduct, when she was specifically found not to have violated California Code , Recognition of the satisfaction of the judgement in favor of John Belcher in light of his attempt to further defraud Profita by seeking to have the same judgment subsequently satisfied in another courtroom, and that the Order of December 11th, 2017, is void in its entirety for failure of Mr. Barry to adhere to the mandates of California Law w/Exhibits

Taylor Profita, *real party in interest, Pro Per*
8501 E Alameda Ave
Denver, CO 80230
Phone: 818-523-9807
Fax: 818-698-0487
tprofita@gmail.com

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE | Case No.: BP099392 |
| THE ANDERSEN FAMILY TRUST DATED JULY 16, 1993 AS AMENDED | Consolidated with BP110256 |
| | REQUEST FOR JUDICIAL NOTICE |

**Issue 1**

Petitioner and Beneficiary Taylor Profita respectfully requests that this court take Judicial Notice that Pauline Hunt had been found not to have committed the actions which continue to be alleged and advanced by Andersen, Brandt and Belcher, specifically the allegation of forgery, upon which nearly all of the misconduct assertions are based. Specifically, in its statement of decision [Exhibit 1], the Mr. Machida stated:

> The court finds that she breached her fiduciary duties specifically in connection with the closing and transfer of funds from the Countrywide account, the forging of Wayne's signature on the Trust's WaMu account change order making her a signatory on the Trust account (Ex 529), and the forging of Wayne's signature on the closing and transfer of funds from the Citibank accounts (Ex 59-66), all before Wayne's death and in her capacity as Wayne's fiduciary and Trust's de facto successor trustee.

Mr. Machida, in his statement of decision, later clarified the findings of the court, stating:

> At this point, the Court is unable to find that Hunt's transfer of these assets, forgeries, false reimbursement claims, and concealment rise to the level of bad faith or intent to defraud the trustor, Wayne, and his heirs.

The legal standards for the crime of forgery are set forth in California Penal Code 470 through 483.5. In each statutory description of an act of forgery, the specific element of "intent to defraud" is required to find one has committed this crime. The court's specific conclusion that it could not conclude that Hunt acted with the intent to defraud deprives this court of any ability to lawfully conclude she had committed forgery. With the necessary element of "intent to defraud" admittedly absent, the court had

REQUEST FOR JUDICIAL NOTICE - 1

no authority or jurisdiction to penalize her for a legal violation that did not exist.

As such, Profita would request this court take Judicial Notice that Pauline Hunt was specifically found not to have been found guilty of forgery as contemplated by the laws of California, and all actions taken by Andersen, Brandt, Belcher, and other actors to penalize or hold her accountable for forgery, alone or in association with other findings of misconduct, violated her due process protections, and all actions taken predicated upon the assertion of Hunt's forgery, which the court confirmed it could not establish a necessary element of, are void and in violation of California Code.

Of note, these findings of inability to find specific intent on the part of Hunt were affirmed by the Appellate Court in **Andersen v. Hunt, 196 Cal. App. 4th 722 - Cal: Court of Appeal, 2nd Appellate Dist., 4th Div. 2011**. They are no longer subject to debate on if a necessary element of forgery, intent to defraud, was present. The adjudication found intent to defraud was not present, and Hunt cannot be penalized for misconduct or a crime she was found to not have met the statutory requirements to commit.

### Issue 2

Profita also requests that this court take judicial notice that the judgment in the proceedings of BC471602 were satisfied through order of this court at the request of Mr. Belcher, who specifically requested this judgment be satisfied through the distribution of trust assets in the order of distribution. The court granted that request on September 25th, 2017 [Exhibit 2]. To date, there has been no challenge to this court's granting of this satisfaction of this judgment debt through the order of distribution.

Based on Mr. Belcher's continued attempts to have this judgment also be separately satisfied in the proceedings of BC471602 [Exhibit 3], thus attempting to defraud and commit theft of property of Profita and Hunt in the guise of satisfying a judgment that has already been satisfied, Profita would ask that this court take judicial notice of the fact that this judgment debt was satisfied with the order of distribution of September 25th, 2017. This order specifically ordered satisfaction of this debt from the proceedings of BC471602 through reduction of Hunt's trust share disbursement in the amount of the judgment Belcher attained in CV471602, with that amount to be distributed to Mr. Belcher upon distribution of the trust assets [Exhibit 2]. Profita would also request that this court take judicial notice that no further liabilities are owed to Belcher by Profita or Hunt.

### Issue 3

REQUEST FOR JUDICIAL NOTICE - 2

1    Profita finally requests that this court take judicial notice that the order of December 11th, 2017

2    [Exhibit 4] is void for failure of Mr. Barry to conform to the mandates of CCP 128.5 (c), which states,

3    "Expenses pursuant to this section shall not be imposed except on notice contained in a party's moving

4    or responding papers or, on the court's own motion, after notice and opportunity to be heard. An order

5    imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying

     the order.".

6
     The order issued by the court failed to comply with this specific provision of the statute. Rather,

7    the order merely stated [Exhibit 4], "Respondent Taylor Profita's motion for CCP Section 128 relief was

8    frivolous and done without standing. The motion violated CCP 128.5. Taylor Profita lacks standing to

9    act as counsel for Pauline Hunt, who is currently represented by counsel." This comes nowhere close to

10   meeting the statutory requirement of section (c), which states, "An order imposing expenses shall be in

11   writing and shall recite in detail the conduct or circumstances justifying the order".

12   Under CCP 128.5, a court is statutorily empowered to award these sanctions under section (a),

13   which states, "A trial court may order a party, the party's attorney, or both to pay the reasonable expenses,

14   including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are

     frivolous or solely intended to cause unnecessary delay."

15
     While discussing sanctions under 128.5, the court in **Decker v. UD Registry, Inc., 129 Cal.**

16   **Rptr. 2d 892 - Cal: Court of Appeal, 4th Appellate Dist., 3rd Div. 2003** stated:

17       In the order awarding plaintiffs their attorney fees, the trial court stated only that UDR's motions
         were "frivolous." This is insufficient. The court's written order "should be more informative than
18       a mere recitation of the words of the statute." (*Childs v. PaineWebber Incorporated* (1994) 29
         Cal.App.4th 982, 996, 35 Cal. Rptr.2d 93.)
19

20
     The parallel is clear. Mr. Barry failed to meet the standards required of CCP 128.5 pertaining to
21
     awarding sanctions. By stating only that Profita's motion was "frivolous", and not elucidating how his
22
     motion was frivolous, he violated the statutory requirements mandated to be performed by the judicial
23
     officer before an order of sanctions for a "frivolous" finding can be issued. As set forth in **People v.**
24
     **Topa Ins. Co., 32 Cal. App. 4th 296 - Cal: Court of Appeal, 1st Appellate Dist., 3rd Div. 1995**:
25       `"[W]here a statute requires a court to exercise its jurisdiction in a particular manner, follow a
         particular procedure, or subject to certain limitations, an act beyond those limitations is in excess
26       of its jurisdiction." [Citations.]'" (*County of Los Angeles* v. *Surety Ins. Co.* (1984) 162 Cal.
         App.3d 58, 62 [208 Cal. Rptr. 263].)
27

28
                            REQUEST FOR JUDICIAL NOTICE - 3

1

2    As such, Mr. Barry exceeded his jurisdiction by failing to follow the statutorily mandated

3    requirements of CCP 128.5, and as such, the order of December 11th, 2017 is void, and cannot be

4    enforced by this court. Profita would ask this court to take Judicial Notice that this order was issued in

     excess of jurisdiction, is thus void, and must be vacated.

5

6

7    Respectfully Submitted, February 11th, 2018

8                                                  /s/ Taylor Profita
     Taylor Profita

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE - 4

# Exhibits

Exhibit 1 – Statement of Decision Phase 2
Exhibit 2 – Order of September 25th, 2017
Exhibit 3 – Proposed Order to Appear for Examination
Exhibit 4 - Order Granting Motion for Sanctions Against Profita

Exhibit 1 – Statement of Decision Phase 2

CONFORMED COPY
(illegible)
Los Angeles Superior Court

Aug 12 2008

John A. Clarke, Executive Officer/Clerk

By_____ Deputy
P. SWEET

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| STEPHEN ANDERSEN and KATHLEEN BRANDT, Individuals,<br><br>Petitioners,<br><br>vs.<br><br>PAULINE HUNT, as an individual, TAYLOR PROFITA, as an individual, PAULINE HUNT, as a Personal Representative of the Estate of Wayne Andersen; PAULINE HUNT, as Trustee of the WAYNE ANDERSEN TRUST, formerly the ANDERSEN FAMILY LIVING TRUST; the WAYNE ANDERSEN TRUST,<br><br>Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. BP 099392 consolidated with BP 110 256<br><br>**Tentative STATEMENT OF DECISION- Phase 2** |

Phase 2 of this matter came on for court trial on March 5, 7, 10, 2008 and September 15, 16, 17, 18 and 24, 2008. The Court had previously tried Phase 1, the bifurcated issue of interpretation of the subject Andersen Family Trust ("Trust") and issued its Statement of Decision on May 28, 2008. The Phase 2 trial consisted of four (4) matters: (1) the Third Amended Petition of petitioners Stephen Andersen and Kathleen Brandt (hereinafter "Stephen" and "Kathleen", respectively) filed October 9, 2007; (2) petitioners' Motion to Remove Pauline Hunt (hereinafter "Hunt") as trustee (tried as a full evidentiary hearing with all other issues); (3) petitioners' Objections to First Accounting of Trustee; and (4) Hunt's Petition for Construction and Reformation of

February 27th, 2018 Request for Judicial Notice
Exhibit 3 - 0007

Trust filed October 11, 2007.[1]

The Court reviewed all of the evidence presented at trial, the closing arguments and extensive post-trial supplemental briefs filed by the parties and issued an oral tentative statement of decision on March 25, 2009. At the Court's request, petitioners filed a proposed Statement of Decision on April 3, 2009, and respondents filed objections thereto on April 21, 2009. Thereafter, pursuant to stipulation of the parties on May 18, 2009, the related companion action earlier filed by Stephen's son, John Andersen ("John"), entitled "John Andersen vs. Pauline Hunt, et al", No. BP 110256, was consolidated with this action and the Phase 2 trial reopened. John stipulated to waive trial on his petition and be bound by the evidence and decision of the Court, on condition that he be allowed to brief the Phase 2 issues. Further briefing by the parties was completed on June 16, 2009.[2] Evidence and arguments were taken on all claims and issues addressed in this Statement of Decision and were fully litigated by the parties.

Having further reviewed the additional briefs and evidence, the Court issues its written tentative Statement of Decision as follows:

## I.   INTRODUCTION

On July 16, 1992 Wayne Andersen (hereinafter "Wayne") and Harriett Andersen, husband and wife, executed pour over wills and the subject Andersen Family Trust

---

[1] The Third Amended Petition sought relief as to both Trust assets and personal assets of decedent Wayne Andersen against Hunt as Trustee and individually. Similarly, petitioners' objections to First Accounting of Trustee implicated Wayne's personal assets as well as the Trust assets. All issues regarding Wayne's personal assets raised by the four (4) pleadings were voluntarily litigated concurrently by the parties without objection.

[2] The Court appointed a special referee, Terry Hargrave, CPA ("Hargrave") to review and report on Hunt's Accounting and petitioners' Objections. Hargrave's Report of Referee filed July 7, 2008 detailing numerous omissions and defalcations of Hunt in the First Accounting, was approved and adopted by the Court and a supplemental accounting (currently pending) was ordered. Hargrave has also been ordered to review and report on Hunt's accounting of Wayne's joint tenancy accounts, government bonds and a USAA account.

February 27th, 2018 Request for Judicial Notice
Exhibit 3 - 0008

(Exs. 1,2,3).  Eva Jeffers, Esq. ("Jeffers") drafted the Trust and acted as attorney for Wayne and Harriet in connection therewith.  Except for trustors (during their lifetimes) the only other named beneficiaries were trustors' children, Stephen and Kathleen.  The only assets placed in the Trust were the family home and Wayne's deposit of his Navy pension checks in the Trust bank account.  Wayne's other assets listed on the list attached to the Trust were never formally placed in the Trust.

Harriett died on November 26, 1993.  Prior to Harriett's death, Wayne and Hunt had been involved in a close personal relationship which continued unabated after Harriett's death and until  Wayne's death on April 28, 2006.

Wayne executed five (5) amendments to the Trust as follows:

**ADDENDA #1 on 10/17/96:**  On death of Wayne, Hunt is to be Trustee.  Should Wayne become incapacitated, Hunt to be successor trustee.  If Hunt predeceases Wayne, then Stephen and Kathleen to serve as successor trustees. (Ex.506)

**ADDENDA #2 on 5/28/03:**  60% of residue of the trust estate to Hunt.  Remaining 40% to be distributed in equal shares to Stephen, Kathleen and John. (Ex. 507)

**ADDENDA #3 on 11/18/03:**  60 % of residue of the trust estate to Hunt.  Remaining 40% to Stephen, Kathleen and John, to share equally.  Should Hunt predecease Wayne, then 25% of the residue to Profita and 75% is divided equally between Stephen, Kathleen and John. Upon Wayne's death, Hunt, then Sunny Asch, then Noella Ballenger to be successor trustee. (Ex. 512)

**ADDENDA #4 on 1/24/04:**  Repeats dispositive provisions of 11/18/03 Addenda which are crossed out.

**ADDENDA #5 on 7/6/04:**  John deleted from receiving residue of the trust estate and Stephen to have John's portion.

Wayne suffered a major stroke on May 11, 2003, which materially affected his cognitive abilities.  Stephen and Kathleen challenge the validity of the trust amendments on the grounds that Wayne lacked mental capacity and/or that Hunt exercised undue influence in connection with the execution of the amendments.

February 27th, 2018 Request for Judicial Notice
Exhibit 3 - 0009

After the May 11, 2003 stroke, Wayne as the sole contributor of funds, established several joint tenancy accounts with Hunt.  Stephen and Kathleen challenge the validity of these joint tenancy accounts on the grounds that Wayne lacked financial capacity and/or that they were the product of Hunt's undue influence.

On February 7, 2006, Wayne suffered the catastrophic stroke that ultimately led to his death on April 28, 2006.  Various transfer of funds from the Trust and Wayne's personal accounts and assets were made by Hunt, both before and after Wayne's death.  Stephen and Kathleen contend that the transfers constituted breaches of fiduciary duty (as to Wayne personally and/or as to Wayne, Stephen and Kathleen as beneficiaries)  by Hunt as Wayne's confidante, de facto successor trustee, and de jure successor trustee of the Trust.

By their Third Amended Petition,  petitioners Stephen Andersen and Kathleen Brandt seek recovery against respondents Pauline Hunt, individually and as trustee of the Andersen Family Trust  and Taylor Profita  for:  (1) conversion; (2) breach of fiduciary duty; (3) constructive  trust; (4) accounting; (5) financial elder abuse; (6) neglect; (7) breach of fiduciary duty; and (8) declaratory relief.  Hunt,  as successor trustee of the Andersen Family Trust,  filed a cross-petition for construction of the Trust and reformation.  The Court bifurcated the issues of construction and interpretation of the Trust and reformation of the Trust for trial (Phase I),  deferring trial of petitioners' remaining claims in their petition as well as petitioners' Petition to Remove Hunt as Trustee and petitioners' Objections to Hunt's First Accounting.  Subsequent to the Phase I trial, John Andersen filed a petition against respondents seeking relief essentially identical to petitioners' Third Amended Petition.  John's petition was consolidated with the within action for all purposes on May 19, 2009.

## II.   SUMMARY OF MEDICAL EVIDENCE AND KEY EVENTS.

Critical to the issues in this case was Wayne's mental capacity following his May 11, 2003 stroke and its effect upon the subject Trust amendments and establishment of

the joint tenancy accounts.  Prior to May 11, 2003, Wayne had had minor TIAs and some noticeable mental slowing.  On May 11, 2003 he had a debilitating stoke and was hospitalized.  As demonstrated by the medical records, from and after that stroke, Wayne was under constant medical treatment and care until the end of his life on April 28, 2006.  He was hospitalized for extended periods from August to December 2003 and February to April 2006.  He was consistently diagnosed by all of the many doctors who saw him as suffering from dementia and chronic alcoholism.

Most of the critical trust amendment and joint tenancy account activities occurred within the first 120 days after the May 11, 2003 stroke.  Wayne became increasingly dependent on Hunt for assistance in daily activities: At the beginning of December 2003 he left the Remy Gardens board and care facility (where he had been hospitalized since early August) and moved into Hunt's home.   He depended on Hunt to monitor his medications; she provided transportation and accompanied him to appointments; and she was involved and assisted him in managing all of his medical, social and financial affairs.  The medical evidence of Wayne's condition after the May 11, 2003 stroke is summarized as follows:

| Exhibit No. | Date and Description |
| --- | --- |
| **2002** | |
| 132 | (6/29/02) Dr. Ted Hackett: sees Wayne for eye bleed.  He believed he was speaking to "the patient and his wife". |
| **2003** | |
| 277 | (3/11/03) Dr. Nasreen Sabir (Wayne's family doctor): Follow up from earlier emergency room ("ER") visit for high blood pressure.  "Female companion (Hunt) wanting that he gets started on some memory pills.  In the past several weeks I have noticed patient does have some changes in cognition in terms of forgetting things and repeating |

things...He forgets all of the meds he is on and has to write everything down."

278    (5/1/03)  Dr. Sabir: Wayne is drinking and forgetful.  Usually stays with Hunt.  Will stay with her for next four weeks.  Doctor notes that since TIA, Wayne is showing "mental slowing".  He has called Sabir's office a few times for directions.  He looks disheveled, unshaven and is in slightly dirty clothes.

**5/11/03: Wayne suffers the debilitating stroke on 5/11/03 and is taken to Holy Cross Hospital.**

**5/19/03: WAMU joint tenancy account (No. 5808) with Hunt opened (Ex.552)**

**5/28/03: Trust Addenda #2 executed giving Hunt 60% and Stephen, Kathleen and John 40% of residuary estate (Ex. 507)**

509    (6/2/03) Taped conversation between Wayne and Profita: Purpose to document Wayne's wishes reflected in 5/28/03 Trust Addenda #2 following Stephen's questioning of trust amendment.  Despite use of expansive vocabulary, Wayne shows meandering thought processes and aphasia.  Sounds like listening to a drunk person trying to sound sober.

263    (6/3/03) Dr. Sabir:  Should slowly wean Wayne off alcohol.  Wayne needs care re his hygiene and housework.

303    (6/5/03) Dr. Sabir referral for home health: "Diagnosis: depression, alcohol use, possible dementia and confusion... Home health to evaluate patient for possible placement or provide home health".

281    (6/13/03)  Dr. Finstead, Neurological consult (at request of Dr. Sabir):

---

chief complaint of memory loss.  Hunt reports that Wayne has had bad memory loss since May 2003 stroke. There are problems with alcohol abuse and he tends to repeat questions to Hunt.  His phraseology is slow and he is quite obsessive and exhibits "aberrant mentation".  29/30 on MMSE on 5/1/03 noted[3].  "Does not adequately reflect degree of intellectual decline he has experienced." Finstead believes Wayne has had a significant intellectual decline.

134 (7/18/03)  Verdugo Hospital Emergency Room: Brought in by "friends" for alcohol abuse.  Alcohol reading of 0.12

135 (8/2/03)  Remy Gardens ( custodial care facility): Admission contract for signed by Hunt as "Authorized Representative".   Note says, "Resident requires additional caretaker, level of care high...due to increased agitation and confusion".

139 (8/2/03)  Dr. Stern initial physician report upon admission to Remy's Garden:   Primary diagnosis is "dementia".  Secondary diagnosis is behavioral abnormalities / aggression / chronic alcoholism.  Mental condition is confused / unable to follow directions / depressed / unable to communicate needs/ unable to leave facility unassisted and nonambulatory.

136 (undated--8/2/03?) "Notification and Family Information" form  lists Hunt as "person responsible for financial affairs".

137 (8/2/03) Resident Emergency Documentation (Remy Gardens): Hunt listed as "next of kin".  Current diagnosis of "dementia / Alzheimer's".

138 (8/2/03) Consent for medical treatment signed by Hunt as "patient's

---

[3]Wayne was given multiple MMSE ( "Folstein") tests over the years, with wildly varying scores. Given Dr. Spar's testimony that the scores are affected by a patient's physical state when the test is given, the quality of the examiner administering the test, and physical conditions where the test was conducted, etc., the Court found the MMSE test scores an unreliable indicator of Wayne's mental condition over time.

-7-
TENTATIVE STATEMENT OF DECISION

**_8/29/03_**_: Another WAMU joint tenancy account (No. 7328) opened with Hunt._
**_(Ex.552)_**

| | |
|---|---|
| 293 | (9/10/03)  Dr. Gary Dosik (Hematology consult): "The impression is dementia, possibly secondary to alcohol and cerebral vascular disease, rule out Alzheimer's." |
| 284 | (9/12/03) Dr. Stern: Hunt and Remy caregivers feel that Wayne's behavior "is much worse". |
| 148 | (9/17/03) Dr. Dosik letter to Stern:  "Mr. Andersen's caretakers ask me to advise him not to drive a car...considering the degree of dementia that I documented on September 10, I believe that he should not be driving" |

**_10/11/03_**: **N.Y Life change of beneficiary form received by N.Y. Life
purportedly signed by Wayne naming Hunt primary beneficiary
(Ex. 23)**

**_10/16/03_**_: General Power-of-attorney given to Hunt. (Ex. 286)_

| | |
|---|---|
| 150 | (10/30/03) Dr. Stern: Wayne wants to live with Hunt long-term.  Stern has no objection to Wayne leaving Remy Gardens board and care but notes that "certainly such a decision would be fraught with difficulties and assistance would be necessary to help manage Mr. Andersen's care." |

**_11/18/03_**_: Trust Addenda #3 executed re giving Hunt 60% and Stephen,
Kathleen and John 40% (with proviso that if Hunt predeceases
Wayne, Profita gets 25% and balance of trust to Stephen,_

-9-
TENTATIVE STATEMENT OF DECISION

*Kathleen and John).*

294         (12/17/03)  Dr. Stern notes that Wayne is living with Hunt.  Ability to
            function, his behavior, cognition all much improved.  Remembering
            names and events and ability keeping track of time, however, are
            unchanged.

151         (12/30/03)  Dr. Stern's "Final Diagnoses" include chronic alcoholism,
            dementia syndrome, abnormal behavior related to underlying
            dementia and history of cerebrovascular accident.  Impression:
            includes dementia syndrome, multifactorial.  Consider Alzheimer's
            plus vascular component plus alcohol toxicity.

            **2004**

152         (1/7/04)  Dr. Stern Letter (for Wayne's use with taxing authorities)
            states "Mr. Andersen is not able to handle his own financial affairs.
            This would explain missing any and all financial deadlines.
            Arrangements have been made for finances to be handled by others"
            (presumably Hunt).

            ***1/24/04: Trust Addenda #4 executed by Wayne repeating dispositive
            provisions of 11/18/03 Trust Addenda #3, which are crossed out.***

296         (1/28/04)  Dr. Stern notes: MMSE score of 26/30 as opposed to
            16/30.  "Much improved".

262         (2/6/04) Dr. Annette Swain (Neuropsychiatric report): Patient has
            psychological history of significant chronic difficulties with anxiety and
            psychiatric history  for chronic severe alcohol dependence for 50
            years.  "Patient's insight appeared absent and his judgment limited".

February 27th, 2018 Request for Judicial Notice
Exhibit 3 - 0015

"Slowed cognitive processing speed". As to learning and memory: superficial processing of new material, difficulty acquiring new noncontextual information. He also demonstrated significant loss of material over relatively brief periods of time. Summary: "Mild to moderate dementia syndrome secondary to chronic alcoholism." "Relative weaknesses are noted in his ability to acquire and process new verbal and nonverbal information, and his memory for such material is mildly impaired". "His companion (referring to Hunt) is responsible for his financial and medication management."

153     (4/16/04) Dr. Stern: History of dementia related to chronic alcoholism.

154     (4/22/04) Dr. Grossman (geriatric specialist): primary diagnosis is "dementia, multifaceted". Mental condition: confused, disoriented, unable to follow instructions.

155     (5/7/04) Dr. Stern notes: Diagnosis of chronic alcoholism and dementia syndrome. Since last visit, admitted to alcohol rehab, but patient could not stand it. Living with Hunt and they have "terrible fights each night about alcohol".

157     (6/17/04) Dr. Stern notes: Stopped drinking since last visit but depressed according to Hunt.

**_7/6/04: Trust Addenda #5 executed deleting John as beneficiary._**

158     (7/13/04) Viewpoint: Still very forgetful.

161     (7/13/04) Dr. Grossman (Summerville Residential Care Facility for the Elderly notes: dementia syndrome with depression and anxiety. Patient confused and disoriented. Alcohol abuse.

298     (7/21/04) Driver's medical evaluation (Dr. Stern): dementia syndrome with behavioral changes. "Manifestation: memory loss".

-11-
TENTATIVE STATEMENT OF DECISION

| | |
|---|---|
| 289 | (8/21/04)  Dr. Stern notes: There has been a question whether he has stopped drinking. Wayne tells Stern: "My wife (referring to Hunt) says I had 2 strokes". |
| 162 | (9/15/04)  Dr. Malcolm Valentine (geriatric psychologist): Per April 2003 Dr. Finstead MRI, patient was drinking heavily and became confused.  An MRI revealed four prior TIAs and two strokes.  Was at Northridge Hospital, then Remy's  Garden, but records unavailable.  Hunt "complained that he seemed to retain nothing".  "It was apparent, however, that his memory for recent events is extremely poor".  "His overall judgment was assessed as uneven".  History of cerebral thrombotic episodes as shown by abnormal MRI. |
| 299 | (9/30/04)  Dr. Stern: Refers to fact that Wayne did not like Dr. Valentine and Stern recommended additional psychiatric care with Dr. Selvirston. |
| 164 | (10/22/04)  Holy Cross Hospital (Dr. Bhardwaj): Slip and fall causing hip fracture. |
| 314 | (10/23/04)  Holy Cross cardiac pre-operative evaluation (Dr. Mark Siefert): 83 year old "demented man who sustained a hip fracture".  "Married, supportive wife (Hunt)" |
| 316 | (10/27/04)  Holy Cross (Dr. Philip Chatham): "Upon talking with patient's live in fiancee...the patient has history of dementia, but not Alzheimer's according to her".  TIAs in April 2003 and May 2003. |
| 170 | (11/4/04)  Holy Cross discharge summary (Dr. Michael Lupo): Discharge diagnosis Dementia Syndrome.   To Magnolia Gardens "SNF" (skilled nursing facility), then to Astoria, then home 12/21/04 per Exhibit 171. |

**2005**

171             (1/6/05)  Dr. Stern notes: Last seen 11/30/04.

537             (Undated) Taped conversation between Wayne and attorney Jeffers:
                Probably May 2005 following Stephen visit with Wayne where Wayne
                unsure if he might have signed some testamentary document.  Jeffers
                doing all the talking and obviously leading questions to Wayne.
                Wayne feeble-sounding and seemingly aware of his mental
                disabilities and limitations.  Jeffers seems to be trying to get Wayne to
                refute the petitioners' claim that the Jeffers-drafted A/B Trust became
                irrevocable upon death of Harriett Andersen.

175             (5/17/05)  Dr. Grossman letter: "I have been following Mr. Andersen
                for over a one year now, and at the time I first saw him,  he was
                diagnosed with advanced dementia of the Alzheimer's type".
                " Ever since I have known him, he has not been able to make sound
                decisions on his own regarding his finances or managing his
                medications".  "It is clear to me that the patient is not competent at
                this time to make decisions regarding his financial assets.  Any
                document signed at this time would certainly be void in terms of its
                true meaning given his dementia".

178             (8/24/05)  Dr. Stern notes: MMSE test results on 7/11/05 were 16/30
                and on 8/24/05 were 23/30.  Memory is still terrible according to Hunt.

**9/30/05:**     **Countrywide joint tenancy account with Hunt opened (Ex.33)**

180             (12/21/05)  Holy Cross / Providence Hospital: broken ribs per x-rays.
        **2006**

184             (2/7/06) Holy Cross emergency: Wayne suffers massive stroke.
                Patient confused, unable to speak, mumbles incoherently.

-13-
TENTATIVE STATEMENT OF DECISION

| | |
|---|---|
| 188 | (2/7/06) Holy Cross: Consent form signed "Pauline Andersen" by Hunt. |
| 189 | (2/8/06) Holy Cross speech pathology: "Severe receptive and expressive aphasia and apraxia.  Speech is less than 10 percent intelligible. |
| 190 | (2/13/06) Holy Cross: Consent for feeding tube signed by Hunt as "Pauline Andersen" per Exhibit 191. |
| 191 | (2/16/06) Consent to feeding tube by "Pauline Andersen". |
| 315 | (3/8/06) Holy Cross asked Dr. Bhardwaj: Re-admission for hematuria and pneumonia. |
| 310 | (3/12/06) Holy Cross psychiatric consult: "He is confused and disoriented".  Patient is under restraint, agitated.  Inconsistent and inappropriate.  Dementia with agitation.  Admitted to Holy Cross 3/8/06 to 3/9/06, then to Magnolia, then back to Holy Cross on 3/12/06 for pneumonia. |
| 266 | (3/14/06) Holy Cross infectious disease consult — Dr. Yellin: "Just mumbling and unable to talk." |
| 194 | (3/22/06)  Holy Cross inter-facility transfer: Still on feeding tube. |
| ____ | (4/28/06)   Wayne dies. |

## III.    FINDINGS RE TRUST AMENDMENTS.

The critical legal issue as to validity of the contested Trust amendments is whether Wayne's mental capacity to execute the amendments to this inter-vivos trust is determined by reference to Probate Code 6100.5 ("testamentary capacity") or Probate Code 810-812 (contractual capacity).

Probate Code 6100.5 refers only to the capacity of a person to make a will.  It does not provide a blanket statement regarding the capacity to execute a "testamentary

instrument". "Testamentary capacity" refers specifically to the ability to execute a valid will. This suggests that the criteria to be used to determine whether a Trustor had the requisite capacity to execute an inter-vivos trust is something different from that described in section 6100.5. The test for capacity to execute a will is whether the Testator understands the effect of the testamentary act, has the ability to recognize the nature and extent of his property, and understand his relations to his living relatives and descendants. This standard is fairly low; if the person understands what property he has, who his friends and relatives are, and what the effect of the Will will be, he has capacity to execute a will.

Probate Code 810-812 describe the criteria to be used to determine whether a person has the capacity to make a variety of decisions, which include entering into contracts and executing wills or trusts. The creation of a trust or trust amendment would seem more akin to entering into a contract or other type of business transaction, which would require a higher level of mental function than the execution of the will pursuant to 6100.5. In this context, the court may look to a variety of factors to establish whether or not the person had the capacity to perform the act in question. Section 812 (a) states that a determination of lack of capacity to perform an act may be made if supported by evidence that the person has a deficit in only one of the mental functions listed therein, as long as that deficit significantly impairs the person's ability to appreciate the consequences of his actions. Walton v. Bank of California (1963) 218 Cal. App 2d 527 states that "A person lacking capacity to make an ordinary transfer of property has no capacity to create an *inter vivos* trust (citations omitted). Incapacity, as in the case of contracts generally, may arise from intoxication of such a degree as to deprive a person of reason and understanding." (citations omitted)

The standard in Probate Code 811 and 812 is actually a higher standard of capacity than that set forth in 6100.5 for the execution of wills. The Court finds that Probate Code 810-812, rather than Probate Code 6100.5, to be the standard applicable to determine Wayne's capacity to execute the subject trust amendments.

February 27th, 2018 Request for Judicial Notice
Exhibit 3 - 0020

Section 811(c) instructs that "the mere diagnosis of a mental or physical disorder shall not be sufficient in and of itself to support a determination that a person is of unsound mind or lacks the capacity to do a certain act." In this case, however, as more fully discussed below, the consistent, overwhelming evidence of Wayne's mental deficits, chronic alcoholism, dementia, short-term memory loss, etc, leads the Court to the finding that after the May 11, 2003 stroke, Wayne lacked the capacity to manage his financial affairs, to execute amendments to his trust., or to open joint tenancy bank accounts.

Further, and as more fully discussed below, Hunt was Wayne's caregiver, supervising all of his medical and financial affairs. At all times after the May 11, 2003 stroke, Wayne required supervision and could not be left alone. He was afraid to be alone and feared another stroke. Hunt arranged and supervised his daily personal affairs and medical care; made his medical appointments; provided his medical history and current symptoms to doctors and hospitals; signed Wayne into medical facilities; represented herself to doctors, hospitals, banks and accountants as the manager or monitor of Wayne's medical and financial affairs and as such was given recommendations and instructions concerning Wayne's needed care; held both a general power of attorney and durable power of attorney for healthcare; sometimes wrote and signed Wayne's checks; and provided all transportation for Wayne and accompanied and assisted him at virtually all meetings and appointments.

Wayne trusted and was dependent upon Hunt and Hunt was well aware of his impairments and dependence. As Wayne's agent and caregiver (even if not a statutory "care custodian"), Hunt was his fiduciary who took unfair advantage and unquestionably benefitted unduly by the post-May 11, 2003 Trust amendments, raising the presumption of undue influence. Hunt failed to present clear and convincing evidence that the amendments were not the result of such undue influence. Estate of Sarabia, 221 Cal.App.3d 599 (1990)

Specifically, as to the issue of Wayne's mental capacity to execute the

-16-
TENTATIVE STATEMENT OF DECISION

disputed trust amendments, given the numerous, consistent findings of chronic alcoholism, mental impairment and dementia in the medical records and testimony, the Court finds that Wayne lacked the requisite mental capacity and/or that Hunt exercised undue influence in connection with the disputed trust amendments.   Accordingly, all four (4) post-May 11, 2003 amendments were invalid and are declared void ab initio.

Notwithstanding the Court's findings of Wayne's incompetency and lack of capacity as to the disputed trust amendments, Stephen and Kathleen would be estopped to challenge the validity of the amendments because of laches (as discussed in the Court's Phase 1 Statement of Decision of May 28, 2008, pg.3).  They knew of Wayne's medical conditions and mental state after the May 11, 2003 stroke and his dependence on Hunt. They suspected and accused Hunt of undue influence after learning of the May 28, 2003 Trust Addenda giving Hunt a 60% beneficial interest.  Yet they waited until after Wayne died almost 3 years later to file their action.

John, a minor born April 12, 1999, was not similarly guilty of laches and therefore, is not so estopped.  Unlike John's position as to the Phase 1 issues of interpretation of the trust instrument language, John is not bound by the representation of his interests under the "virtual representation" doctrine.[4]  As to the trust amendments, Stephen and Kathleen's interests and John's interests presented an irreconcilable conflict of interest since it was in their interests to avoid the May 28, 2003 amendment initially naming John as a beneficiary of the Trust.

John places in issue Wayne's capacity to execute the May 28, 2003 and July 6, 2004 amendments.  John claims that Wayne lacked mental capacity on July 6, 2004 and thus the amendment deleting John as a beneficiary is void.  But John claims that Wayne had the capacity to execute the May 28, 2003 amendment giving John one-third of 40% beneficial interest.  The Court, however, finds that Wayne lacked capacity at all times after the May 11, 2003 stroke and that all of the Trust amendments executed

---

[4]See July 29, 2008 Order overruling petitioners' objections to the Phase 1 Statement of Decision

February 27th, 2018 Request for Judicial Notice
Exhibit 3 - 0022

thereafter were void.  Thus, on Wayne's death on April 28, 2006, the only trust beneficiaries were Stephen and Kathleen as provided in the original Trust instrument.

## IV.  FINDINGS RE FINANCIAL CAPACITY.

As to financial or contractual capacity,  the court finds that Wayne lacked financial capacity since at least his May 2003 stroke[5], and lacked the capacity to understand or appreciate the significance or ramifications of placing personal assets in joint tenancy accounts with Hunt.[6]  Both of Wayne's treating physicians, Dr. Stern and Dr. Grossman, documented their belief that he was unable to manage his financial affairs.  From their review of the 2003-2006 records[7],  both Dr. Spar and Dr. Chen, respondents' and petitioners' respective geriatric experts, testified that Wayne could not be trusted to manage his financial affairs.  Therefore, the Court finds that the establishment of the joint tenancy accounts at Countrywide (No. 211836, opened September 30, 2005), Citibank (No. 9250, opened February 28, 2005) and WaMu (No. 5808 opened May 19, 2003 and No. 7328, opened August 29, 2003) were void *ab initio*.  As between Hunt and Wayne, all funds deposited in these accounts were originally the sole property of Wayne and remain so.

The Court further finds that at all times from at least May 11, 2003, Wayne suffered from dementia, including the deficits listed in Probate Code 811, and lacked the capacity to make more than rudimentary, if any,  financial decisions.  See Probate Code 812.  The Probate Code 810 presumption that all persons have the capacity to make decisions was rebutted overwhelmingly by the evidence in this case.

---

[5]  Wayne's financial transactions after May 11, 2003, if any, other than those noted herein were not placed in issue by the parties.

[6]  The fact that Wayne carried his checkbook and wrote checks on occasion was not persuasive that he had financial capacity.

[7]  Dr. Spar may not have reviewed all of Wayne's records since he only reviewed those records (unspecified) given to him by Hunt's attorneys.  This fact was noted by the Court in evaluating some of Dr. Spar's conclusions.

Respondent's geriatric expert, Dr. Spar, opined that Wayne had some of the Probate Code 811 deficits "all the time" between 2003-2006, and that it absolutely affected his ability to handle his financial affairs. The Court concurs in this assessment. Dr. Spar specifically referenced several the Probate Code 811 deficits suffered by Wayne and commented:

    (1) Alertness and affect: "Almost all the time"

    (2) Orientation to time and place: "Absolutely"

    (3) Attend and concentrate: "Most impaired" and "Most of the time"

    (4) Recall: "Immediate recall impaired probably in all of the tests"

    (5) Ability to modulate mood: "Fear and depression"

The Court also finds that at all times herein relevant, Wayne suffered from dementia as defined in the Diagnostic and Statistical Manual of Mental Disorders ("DSM") and should have been under conservatorship pursuant to Probate Code 2356.5(a).

The Court further finds that Hunt was aware of Wayne's dependency on Hunt, and knew of Wayne's lack of financial capacity at all times after May 2003.[8] As his trusted confidante in whom Wayne placed his trust and confidence, Hunt had a fiduciary obligation not to seek personal financial advantage over Wayne's assets. The source of funding for the joint tenancy accounts was solely Wayne's assets. Hunt participated actively in establishing the joint accounts[9] and benefitted unduly by the establishment of those accounts, exercised undue influence over Wayne in establishing those joint tenancy accounts, and took unfair advantage of Wayne's impairment. Civil Code 1575.

After his May 11, 2003 stroke, Hunt managed Wayne's financial affairs including

---

[8] Indeed, as early as August 22, 2003, Dr. Stern notes that Wayne's "Friend, Pauline Hunt, has proxy durable power of attorney for healthcare management and also for asset management"

[9] Wayne could not drive. Hunt transported Wayne and was present and assisted him at all financial and medical appointments.

writing and signing checks for him.[10]   Given her role in his financial affairs, while Wayne undoubtedly wanted Hunt to have signature authority on the joint tenancy accounts, there was no credible evidence that he intended to give Hunt 50% ownership or gift the accounts to Hunt on death. Given his condition after the 2003 stroke, Wayne could not have understood that he need not make Hunt an undivided 50% joint tenant owner of the funds in order to make the accounts accessible to her.   It should be noted that there were no substantial gifts by Wayne to Hunt prior to the 2003 stroke, no joint tenancy accounts established, and no change in Wayne's Will (Ex. 2,  in which he expressed his desire and intention that all assets be placed in the Trust).  Further, there was no change in Wayne's Will to give Hunt any non-trust assets and no evidence of Wayne's desire or intent to give Hunt any more than the 60% Trust interest (except Hunt's self-serving testimony).

But for Wayne's mental impairment and Hunt's undue influence, the Court believes that Wayne would have placed the joint tenancy assets in the Andersen Family Trust as expressed in his Last Will and Testament, or would have, at worst, retained his sole ownership of those funds which would have poured over into the Trust after his death.

## V.   THIRD AMENDED PETITION CLAIMS

(1)        Wayne lacked the mental capacity to understand the nature and consequences of the trust amendments.  Wayne was a dependent adult as defined in Welfare & Institutions Code 15610.23.    All of the medical evidence supports the conclusion that at all times after May 11, 2003 Wayne was a confirmed alcoholic, was mentally impaired and needed assistance and supervision of his daily activities most, if

---

[10]Numerous checks in evidence were obviously filled out and signed for Wayne by Hunt. See Ex. 526 (WAMU account #7328) and Ex. 120-121; Ex. 550 (WAMU account #4388) and Exs. 100-110 and 75-103

-20-
TENTATIVE STATEMENT OF DECISION

not all of the time.  Hunt was aware of Wayne's incapacity and acted as his caregiver, managing his medical and financial affairs.  Wayne's execution of the trust amendments were the result of Hunt's undue influence and she benefitted disproportionately by those amendments.  Hunt  failed to show that the amendments were not the result of her undue influence.

(2)        The court finds that all funds in the Countrywide, Citibank, and WaMu joint tenancy accounts were and are the sole property of Wayne, and Hunt has no right, title, or interest in those funds.  Hunt withdrew and took sole control of the funds in these joint tenancy accounts following Wayne's February 2006 stroke, eventually closing the accounts and placing the funds in her personal accounts in violation of her fiduciary duties.   Accordingly, Hunt is deemed to hold all proceeds of the joint tenancy accounts in constructive trust and she is enjoined and restrained from transferring, hypothecating, or otherwise disposing of any of the joint tenancy funds or their proceeds pending further order of court.  The funds are to be delivered to the personal representative of Wayne's estate when one is ultimately appointed.

(3)        The Court finds that the New York Life policy was not an asset of the AFT.  However, Wayne lacked capacity when he executed the change of beneficiary form on October 11, 2003 naming Hunt as primary beneficiary. (Ex. 23)[11]  Therefore, the change of beneficiary was void and the prior named beneficiaries, Stephen and Kathleen, are the parties to whom the proceeds of the policies should have been paid.  Accordingly, Hunt holds said policy proceeds in constructive trust for the benefit of Stephen and Kathleen and Hunt is ordered to provide an accounting of the policy proceeds to Hargrave.

(4)        Similarly, the USAA account and Government E Bonds referenced in the Trust were not placed in the Trust and remained personal assets of Wayne.  The $20,816 proceeds of the Government E Bonds were deposited in the Wayne-Hunt joint

_____

[11]Hunt collected the policy proceeds of $44,854 following Wayne's death. (Hargrave report, pg. 3)

account #7328 at WaMU (Hargrave Report, pg.4) The $5877 USAA account proceeds were deposited in the Trust-Hunt joint account #6506 at WaMU. (Hargrave Report, page 5). Hunt is ordered to provide an accounting of the disposition of the proceeds of the Government E Bonds and USAA account to Hargrave. The Court finds that all proceeds of these two assets were the sole property of Wayne, that any appropriation of the proceeds by Hunt for her personal benefit was in violation of her fiduciary duties, and that she holds said proceeds in constructive trust for the benefit of Wayne's estate.

(5)     Unlike the post-May 2003 joint tenancy accounts, the UBS Paine Webber account was established in 1991 with contributions by both Wayne and Hunt, and was a valid joint tenancy account. While Hunt's closing of the account and forging Wayne's endorsement on the closing check was a breach of her fiduciary duties, the funds did become her sole property legally after Wayne's death in any event. Like the New York Life policy, the UBS Paine Webber account was never an asset of the trust.

(6)     Pursuant to the seventh cause of action in the Third Amended Petition, as set forth in the Phase 1 Statement of Decision, there was no breach of fiduciary duty by Wayne or Hunt in failing to put the assets of Harriet Andersen (Wayne's deceased wife) in a separate B trust.

(7)     Pursuant to the sixth cause of action for neglect in the Third Amended Petition, the evidence failed to establish that either Hunt or Profita was guilty of physical neglect as to the medications or treatment of Wayne.

(8)     As to the claims in the Third Amended Petition against Taylor Profita for elder abuse and elder neglect, petitioners failed to carry their burden to establish elder abuse or wrongdoing by Profita individually (as opposed to acts performed as agent of Hunt). Although there were transfers of certain funds to Profita, the Court finds that the transfers were by Hunt and thus are the responsibility of Hunt, not Profita. Profita was, at all times herein material, acting as an agent of Hunt and any improper diversions of trust assets would be chargeable to Hunt. Accordingly, there will be judgment for Profita as to the claims of wrongdoing in the Third Amended Petition.

-22-

TENTATIVE STATEMENT OF DECISION

(9)      As to the claims in the Third Amended Petition against Wayne Andersen personally for conversion and breach of fiduciary duty, given the Court's Statement of Decision in Phase 1 and the further findings as herein set forth, the Court finds there was no improper or actionable conduct by Wayne during his lifetime and renders judgment for Wayne as to all such personal claims.

## VI.   FINDINGS ON ANCILLARY ISSUES

(1)      The Court finds that Hunt violated her fiduciary duties as trustee. Specifically, she violated her duties: (1) to administer the trust solely in the interests of the beneficiaries  [Probate Code 16002(a)];  and (2) not to take part in any transaction in which she had an interest adverse to any beneficiary  [Probate Code 16004(a)]. Accordingly, the motion to remove Hunt as trustee is granted and Hunt's powers as trustee are suspended forthwith.  She is ordered removed as trustee immediately.  The Court has issued an order to this effect in its April 15, 2009 Order re Successor Trustee.

The court finds that before and after Wayne's death, Hunt breached her fiduciary duties to Wayne personally and her fiduciary duties as successor trustee of the Trust.  Following Wayne's massive stroke on February 6, 2006, he was almost totally incapacitated, he was enfeebled, could not speak, had a feeding tube  and was disoriented.  He was unable to care for himself or in any way manage his affairs.  After the stroke, Hunt assumed sole control over both Wayne's personal financial affairs and all trust assets.   The court finds that she breached her fiduciary duties specifically in connection with the closing and transfer of funds from the Countrywide account, the forging of Wayne's signature on the Trust's WaMu account change order making her a signatory on the Trust account (Ex 529), and the forging of Wayne's signature on the closing and transfer of funds from the Citibank accounts (Ex 59-66), all before Wayne's death and in her capacity as Wayne's fiduciary and Trust's de facto successor trustee.

After the February 2006 stroke, the court finds Wayne was incapacitated and unable to act either as trustee or on his own behalf.  Hunt was the de

-23-
TENTATIVE STATEMENT OF DECISION

facto and de jure successor trustee and so acted. She took over control and management of trust assets and bank accounts[12], paid bills and assumed responsibility for maintaining the Trust's residence.

Following Wayne's death, Hunt breached her fiduciary duties to petitioners as beneficiaries by failing to disclose and concealing the existence of joint tenancy assets in her accounting and discovery responses, and paying personal expenses or seeking unsupported reimbursements from trust monies as evidenced in the Hargrave report. The Court has approved and adopted the findings and recommendations of the Hargrave report, which is incorporated herein by reference. Hunt violated her duty to administer the Trust solely for the benefit of its beneficiaries. Probate Code 16002. Further, she breached her duty not to use or deal with trust property for her own profit. Probate Code 16004. Hunt's wrongful appropriation of assets to her own use, even if she believed she was entitled to do so, dictates that she be removed as trustee. Moore v. Barnes, 8 Cal2d 162,165 (1937).

The Court notes that pursuant to the November 18, 1993 amendment, the first named successor trustee is Sunny Asche. The court has been advised that Ms. Asche has agreed to serve as successor trustee. In the April 15, 2009 Order re Successor Trustee, Sunny Asche was appointed successor trustee to serve without bond.

Hunt has been ordered to forthwith deliver all Trust records and property to the successor trustee and was ordered to cooperate with both the successor trustee and Ms. Hargrave[13] in effecting the transition to the new trustee and to complete

---

[12]Including making herself a joint tenant with the Trust on WaMu account No. 4388 on March 3, 2006 using her power of attorney.

[13] Terry Hargrave, CPA, was appointed referee to review, analyze and report to the court concerning Hunt's First Accounting and petitioners'' objections thereto. Hargrave filed her report on July 7, 2008 finding numerous discrepancies and omissions in the First Accounting. Petitioners' Objections to First Accounting by Trustee were sustained as reflected in the Hargrave report. Respondents' objections to the Hargrave report were overruled. The Hargrave Report and its findings and recommendations were formally approved and adopted by the Court as reflected in the April 15, 2009 Order re Successor Trustee.

the supplemental accounting.  Hunt was ordered to sign all the necessary authorizations, confirmations to banks and other institutions holding assets of the trust necessary or convenient to permit the successor trustee to assume control of those assets.

(2)      The Court finds that Hunt had fiduciary responsibilities toward Wayne throughout the period of time from 2003 through Wayne's death, and breached her fiduciary duties to Wayne both in his capacity as an individual and as beneficiary of the Trust.  Specifically, the Court finds that Hunt had a personal, confidential relationship of trust and confidence with Wayne since as early as 1993.  Hunt testified that they were "domestic partners" and treated one another as husband and wife.  In her Declaration in Opposition to the Motion to Remove Trustee filed March 2, 2007 (of which the Court takes judicial notice), Hunt references the fact that throughout the medical records "I am referred to as the friend, fiancee, and/or 'significant other'" and the fact that "We took care of each other as husband and wife".

Hunt helped manage and was intimately involved in Wayne's health and financial affairs at all times before and after May 2003.  The medical records are replete with references to Hunt as Wayne's caregiver, advisor, agent, etc. Hunt's personal, confidential relationship with Wayne imposed fiduciary obligations upon her to not take advantage of Wayne's mental impairment to subordinate Wayne's financial interests to her own.  Rochelle L. v. Roman Catholic Church, 106 Cal.App.4th 257 (2003).  Further, on October 6, 2003, Hunt was given Wayne's general power of attorney (under which Hunt made herself an authorized signatory on the Trust's WAMU account. (Ex 529).  The power of attorney designation was known to and accepted by her and, at the very least, gave her agent and fiduciary responsibilities towards Wayne

(3)      With regard to respondents' petition for reformation, given the Court's interpretation of the trust instrument in its July 29, 2008, Statement of Decision, the Court declines to formally reform the trust language.  Respondents have withdrawn their request for formal reformation given the Court's interpretation set forth in its Statement of Decision in the Phase 1 trial.

-25-

(4)      As to the statutory elder abuse claims in the Third Amended Petition, the Court finds that the claims of statutory elder abuse were not sustained by the evidence. Specifically, the evidence failed to establish that Hunt and Profita were "care custodians" as defined in <u>Welfare & Institutions Code</u> 15610.17   (See <u>Bernard v. Foley</u>, (2005) 130 Cal. App.4th 1109)[14]  and failed to establish that Hunt's actions were done with an intent to defraud (See <u>CACI</u> 3100).  Notwithstanding her management of virtually all of Wayne's daily activities, there was no evidence that Hunt actually administered medicines or provided "wound care".

(5)      The Court finds that the petitioners, as both beneficiaries of the Trust and as the sole heirs of Wayne (in the absence of any probate of the Will),  have and had standing to seek the declaratory relief and recovery of personal assets, as well as Trust assets, sought by the Third Amended Petition.

## VII.       **THE EVIDENCE**

All of the foregoing issues were placed in issue by the parties and both evidence and argument presented thereon.  The Court believes that all of the foregoing findings were supported by the evidence at trial and the relief supported by the allegations and claims set forth in the petitions and motions filed by the petitioners.  Nevertheless, to clarify the record, the Court invited a motion to amend the Third Amended Petition to conform to proof.  Petitioners filed such a motion on April 17, 2009.  The court granted

---

[14]  <u>Foley</u> overruled a prior ruling in <u>Conservatorship of Davidson</u> (2003) 113 Cal.App.4th 1035, which had held that a person could not be a "care custodian" for purposes of Probate Code 23150 if there was a pre-existing relationship between the dependent adult and the person providing the services.  In <u>Foley</u>, the court found that the individual was a care custodian notwithstanding a pre-existing relationship, because the person provided meals and assisted w/ daily living activities, administered oral medication and provided "wound care".  The <u>Foley</u> case distinguished itself from the <u>Davidson</u> case, which involved a neighbor who did shopping, cleaning, made phone calls, drove the dependent adult to the doctor, helped with banking but did not provide any "medical" services and the court held that she was not a care custodian.  The <u>Foley</u> court pointed this out as an example of why the <u>Davidson</u> decision was not on point with the facts of <u>Foley</u>.

the motion to amend to conform to proof. The eighth cause of action for declaratory relief, and paragraph 89 thereof, was amended by interlineation to incorporate by reference paragraphs 49 to 51 concerning conversion, paragraphs 59 to 61 concerning constructive trust, and paragraphs 71 to 76 concerning financial elder abuse.

The key evidentiary findings supporting the court's findings and orders include, but are not limited to, the following:

(1)   Wayne and Hunt began living together in November 2003; they enjoyed a relationship of trust and confidence, and considered themselves de facto husband and wife.

(2)   At all times after the May 11, 2003 stroke Wayne was a dependent on Hunt for assistance for all of his medical, financial and social needs. He could not drive;  Hunt provided transportation and accompanied him to virtually all meetings with doctors, advisors, banks, and social visits. Hunt arranged and supervised his daily personal and medical care. She represented herself to doctors, hospitals, and financial consultants as the manager or monitor of Wayne's medical and financial affairs and, as such, was given recommendations and instructions concerning Wayne's needed care.  Hunt had a confidential relationship and position of trust with Wayne.  As such she had fiduciary duties to take no actions to benefit herself at Wayne's expense. In Re Estate of Cover, 188 Cal. 133, 143 (1922);  Lynch v. Cruttendon & Co., 18 Cal.App. 4th, 802 (1993) ;  Ford v. Shearson Lehman American Express, 190 Cal.App. 3d 1011 (1986).   "Confidential and fiduciary relations are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another. The very existence of such a relation precludes the party in whom the trust and confidence is reposed from participating in profit or advantage resulting from the dealings of the parties to the relation." In Re Estate of Cover at 143.

(3)   Hunt had both Wayne's General Power of Attorney and Durable Power of Attorney for Healthcare.  Probate Code 4237 states that an agent under a durable power of attorney has a duty to act in the interest of the principal and to avoid

-27-
TENTATIVE STATEMENT OF DECISION

conflicts of interest. Section 4233 further requires that the agent must keep the principal's assets separate and distinct from other property. Civil Code 2322(c) requires that agents under powers of attorney have the same duty of loyalty to the principal as trustees owe to the trust beneficiaries. Hunt testified that she thought it was permissible for her to write and sign checks for Wayne since she had his power of attorney. To the extent that Hunt acted pursuant to her authority as agent in fact under the power of attorney, she had a fiduciary duty to Wayne as the principal. Since Hunt was aware that Wayne trusted her, as expressed by his naming her in both the General and the Durable Power of Attorney, even if she did not formally exercise those powers, Hunt was on notice of the trust which Wayne placed in her, which gave rise to the general fiduciary duty.

         (4)   From and after May 2003, the medical records substantiate that Wayne experienced a steady decline in his health and similar decline in his mental functioning. The geriatric experts, Dr. Spar and Dr. Chen, gave testimony and opinions based on their extensive review of all medical records relating to Wayne and relied upon, among other things, Dr. Stern's August 22, 2003, observations that Wayne suffered from alcoholism and impaired dementia. Virtually all medical records after May 2003 referenced Wayne's chronic alcoholism and impaired mental state. The neurological evaluation of Dr. Swain of February 6, 2004 (whose conclusions Dr. Spar strongly agreed with) included her diagnosis of mild to moderate alcoholic dementia. Dr. Swain further expressly noted that Wayne showed the absence of insight and limited judgment, and further expressly noted that his companion, Ms. Hunt, had assumed responsibility for his financial and medication management at that time.

     The geriatric experts also relied upon, among other things, the May 17, 2005, letter from Dr. Grossman who had treated Wayne since January 2004. (Ex.175). Dr. Grossman noted that: (1) Wayne suffered from advance dementia of an Alzheimer's-type when he first saw him (presumably January 2004); (2) that Wayne was not competent to make decisions concerning his financial assets; and (3) that any document signed at that time would certainly be void in terms of his true meaning given

-28-

his dementia.  Respondents' expert, Dr. Spar while agreeing with Dr. Grossman's statements,  further commented that he thought that Wayne's dementia had gotten worse between 2003 and 2005.  Wayne and Hunt's accountant, Gary Martin, in his letter concerning Wayne's 2005 tax return, noted that Wayne was ill, had dementia, and was being assisted by his friend, presumably Hunt.

(5)   Hunt knew Wayne had dementia and lacked financial capacity

as

evidenced by her consistent attendance at all medical appointments as Wayne's caregiver and companion.  The Court believes that Hunt had specific knowledge of Dr. Stern's observations of August 22, 2003, Dr. Swain's observations of February 6, 2004, and Dr. Grossman's observations of May 17, 2005.  She appeared with Wayne at all medical appointments and spoke to the medical personnel treating Wayne, and the Court finds it not credible to believe that she had no knowledge of his incapacity as noted by the medical personnel.[15]  Certainly after his massive stroke in  February 7, 2006, she knew of Wayne's near total incapacity and inability to do anything beyond rudimentary communication.  Hunt's testimony that Wayne consented to the closing of the joint tenancy accounts and thereafter transferring of joint tenancy assets to Hunt was not believable given Wayne's condition at that time and thereafter.  The medical records are replete with references to his inability to communicate or function at that time.

Hunt testified that Wayne was unable to manage anything when it was convenient for her to say that.  At other times, Hunt claimed that Wayne was suitably coherent when it suited her purposes as to other matters.

(6)   During this period of time between the final February 7, 2006 stroke and Wayne's death, Wayne was incapacitated and Hunt had sole control of both

_____

[15]It is notable that throughout the medical records after the 5/11/03 stroke, there are few, if any references to direct statements by Wayne to doctors or visa versa; all statements are by or to Hunt.  It the Court's view, this further evidences Wayne's limited capacity, dependence on Hunt, and Hunt's acting as Wayne's caregiver.

Wayne's personal assets and the Trust assets. Hunt closed the joint tenancy account at Citibank, wrote the February 11, 2006, letter to Citibank, and forged Wayne's endorsement on the closing check. Similarly, the Court believes she forged the account change order at WaMu to add her as a signatory on the Trust's bank account. She closed the other Citibank account and misappropriated Wayne's social security and pension checks deposited to that account. She closed the UBS Paine Webber account and forged Wayne's endorsement on the March 3, 2006, closing check. Although the UBS Paine Webber account was a legitimate joint tenancy account which Hunt had the right to invade, her forging of Wayne's endorsement was further evidence of her willingness to breach her fiduciary duties to Wayne.

(7)   As the Trust's successor trustee, Hunt concealed the existence of these joint tenancy accounts and transfers of funds by her failure to disclose the existence of the accounts and transfers in Wayne's final tax return and in discovery in this litigation, and failed to produce records with regard thereto as referenced by Judge Aviva Bobb's several discovery orders in this litigation, of which judicial notice is taken.

(8)   The Court believes these acts evidence at least the lack of innocent belief in the propriety of those transfers.   Pursuant to <u>Civil Code</u> 2295, the Court finds Hunt was Wayne's agent in the management of Wayne's assets, and as such, had a fiduciary duty in matters within the scope of the agency, which included assistance to Wayne in the management of his financial and medication responsibilities. As such, the Court believes that Hunt had a fiduciary duty with regard to the funds in those joint tenancy accounts not to transfer those funds for her personal use which, in fact, she did.   (<u>Evangelo v. Presoto</u>, 67 Cal.App.4th 615, 623 (1998).

(9)   Further, after the February 7, 2006, stroke, Wayne was incapacitated and unable to perform any duties as trustee and Hunt was both de jure successor trustee (by virtue of the November 18, 1993 trust amendment) and de facto

February 27th, 2018 Request for Judicial Notice
Exhibit 3 - 0035

trustee, and so acted.[16]  She had a duty not to deal with trust property for her own profit. As to the joint tenancy accounts, the evidence indicates that Hunt transferred all joint tenancy funds to her personal accounts (save $50,000 deposited in the Trust's WaMu account).

        (10)   With regard to Hunt's credibility, the Court finds that Hunt's credibility with regard to the trust interpretation issues in Phase 1,  as opposed to Wayne's financial or contractual capacity issues in Phase 2,  were very different in terms of their believability.  Her claim that she never told Mr. Martin that Wayne had dementia, but Mr. Martin told the IRS that Wayne was ill and had dementia, is unfathomable except to conclude that she was lying.  She told Judge Smith at her May 15, 2007, deposition that she never signed Wayne's name but later admitted that she did so.  She claimed that she did not recall the account change form placing her as signatory on the trust's WaMu account, yet immediately thereafter she was signing trust checks.  In the face of the consistent,  repeated references in the medical records regarding Wayne's alcoholism, she claimed to be unaware of his serious drinking problem.  Both Hunt and Profita were uniformly not believable on this issue.

        Her testimony that Wayne put her name on his joint tenancy accounts and therefore "the accounts were mine" is indicative of her misguided view of her fiduciary obligations.  Regarding Wayne's inherited funds deposited in the Countrywide account, her statement that Wayne told her that "it's not only mine, it's yours" and "you can use it anytime with no restrictions" was not believable but was consistent with what the Court finds to have been a consistent lack of candor as to the Phase 2 testimony.  Unlike her Phase 1 testimony dealing with testamentary intent of Wayne, when dealing with the issues involving her personal financial interests in Phase 2, she lacked candor and credibility.  Significantly, her statement that after his final incapacitating stroke, Wayne

---

[16]    Wayne's 10/17/96 trust Amendment specifically provided that "Should trustor, Wayne Andersen become incapacitated, then Pauline Hunt shall act as successor trustee." (Ex 506).  Wayne's 5/28/03 Designation of Conservator specifically provided that "...in the event anyone attempts to file a conservatorship proceeding, then Pauline Hunt is to act as conservator." (Ex 508)

said it was okay to move the Countrywide joint funds (though he was incapacitated and unable to speak)[17], and then Hunt moving these monies to a personal CD to which Wayne had no legal access, was unbelievable and the Court finds to have been an outright fabrication. It was also inconsistent with her prior deposition testimony to Judge Smith and to Judge Wayne. As the court found in the Phase 1 trial, Ms. Hunt has a good memory. She is sharp regarding helpful recollections but feeble and vague as to unhelpful recollections.

At this point, the Court is unable to find that Hunt's transfer of these assets, forgeries, false reimbursement claims, and concealment rise to the level of bad faith or intent to defraud the trustor, Wayne, and his heirs. It is at least possible that she had a mistaken understanding of her responsibilities, but the Court is not by any means sure of that at this point.

III.  **CONCLUSION**

This Tentative Statement of Decision shall be the Court's Statement of Decision unless a party files objections specifying any omitted controverted issues or making specific language proposals not covered in this Statement of Decision within fifteen days, with replies by the other parties within 10 days thereafter.

The Clerk is ordered to serve this Tentative Statement of Decision upon all parties.

Dated: August 12, 2009

KENJI MACHIDA
Judge

_____

[17] Hunt herself advised Countrywide on February 11, 2006 that Wayne was unable to speak (Ex. 35)

-32-
TENTATIVE STATEMENT OF DECISION

Exhibit 2 – Order of September 25th, 2017

1  **LAW OFFICES OF JOHN A. BELCHER**
   **JOHN A. BELCHER (SBN 99300)**
2  **NICHOLAS W. SONG (SBN 217070)**
   150 East Colorado Boulevard, Suite 215
3  Pasadena, California 91105
   (626) 577-5771
4  (626) 577-7769 Facsimile

5  Attorneys for Stephen Andersen and Kathleen Brandt

6

**FILED**
Superior Court of California
County of Los Angeles

SEP 25 2017

Sherri R. Carter, Executive Officer/Clerk
By _Viola D. Sigus_, Deputy
Viola Sigers

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                      FOR THE COUNTY OF LOS ANGELES

9

10  IN RE

11

12  THE ANDERSEN FAMILY TRUST
    DATED JULY 16, 1992 AS
13  AMENDED.

14

**CASE NO. BP099392**
Consolidated with BP110256

[AMENDED PROPOSED] ORDER
DIRECTING THE TRUSTEE TO MAKE
A FINAL DISTRIBUTION

Hon. William Barry

9/25/17
GB

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Amended Proposed] Order re Final Distribution

1    Stephen Andersen's and Kathleen Brandt's Petition to Compel Successor Trustee to

2 Distribute Trust Funds came on for hearing on ~~May 12, 20~~17, in Department 67 of the Los Angeles

                                      9/25/17

3 Superior Court. Petitioners Stephen Andersen and Kathleen Brandt and Objector Pauline Hunt

4 appeared by their respective counsel.

5    The Court, having considered the documents before it, having heard the arguments of

6 counsel, and being fully advised, GRANTS the Petition as follows:

7    IT IS ORDERED, ADJUDGED, AND DECREED that:

8    1. Sunny Asch, as Successor Trustee of the Andersen Family Trust, dated July 16, 1992, as

9 amended, on January 24, 2017, shall pay forthwith the following:

10    a. To Pauline Hunt as a beneficiary of the Andersen Family Trust: the principal sum of

11 $267,159.26, calculated as follows:

| | |
|---|---|
| $1,034,140.69 | 60% of Andersen Family Trust |
| $ (54,465.22) | 40% of principal ($136,163.05) diverted by Pauline Hunt from Trust |
| $ (73,306.26) | Interest on the amount diverted by Pauline Hunt from Trust (up to 8/3/10), as calculated by Judge Arnold H. Gold (Exhibit A, Pages 22-23, Line 15-Line 2) |
| $ (95,873.71) | Interest on the amount diverted by Pauline Hunt from Trust (8/3/10 to 8/16/17) |
| $ (77,804.89) | 40% of principal ($194,512.23) diverted by Pauline Hunt from Estate of Wayne Andersen |
| $ (85,901.51) | Interest on the amount diverted by Pauline Hunt from Estate of Wayne Andersen (up to 8/3/10), as calculated by Judge Arnold H. Gold (Exhibit A, Page 23, Line 8-13) |
| $ (136,957.93) | Interest on the amount diverted by Pauline Hunt from Estate of Wayne Andersen (8/3/10 to 8/16/17) |
| $ (86,899.56) | Amount diverted by Pauline Hunt from Stephen Andersen and Kathleen Brandt (renewed 10/15/12, Exhibit C) |

-1-
[Amended Proposed] Order re Final Distribution

| | |
|---|---|
| $ (42,045.10) | Interest on the amount diverted by Pauline Hunt from Stephen Andersen and Kathleen Brandt (renewed 10/15/12) |
| $ (60,783.49) | Judgment Creditor John Belcher (principal, 1/11/2013, Exhibit B) |
| $ (27,943.75) | Interest on Judgment to John Belcher (1/11/13 to 8/16/17) |
| $ 267,159.26 | **Total** |

b. To Stephen Andersen and Kathleen Brandt the principal sum of $1,033,519.17, calculated as follows:

| | |
|---|---|
| $ 689,427.12 | 40% of Andersen Family Trust |
| $ 54,465.22 | 40% of principal ($136,163.05) diverted by Pauline Hunt from Trust |
| $ 73,306.26 | Interest on the amount diverted by Pauline Hunt from Trust (up to 8/3/10), as calculated by Judge Arnold H. Gold (Exhibit A, Pages 22-23, Line 15-Line 2) |
| $ 95,873.71 | Interest on the amount diverted by Pauline Hunt from Trust (8/3/10 to 8/16/17) |
| $ 77,804.89 | 40% of principal ($194,512.23) diverted by Pauline Hunt from Estate of Wayne Andersen |
| $ 85,901.51 | Interest on the amount diverted by Pauline Hunt from Estate of Wayne Andersen (up to 8/3/10), as calculated by Judge Arnold H. Gold (Exhibit A, Page 23, Line 8-13) |
| $ 136,957.93 | Interest on the amount diverted by Pauline Hunt from Estate of Wayne Andersen (8/3/10 to 8/16/17) |
| $ 86,899.56 | Amount diverted by Pauline Hunt from Stephen Andersen and Kathleen Brandt (renewed 10/15/12) |

-2-

[Amended Proposed] Order re Final Distribution

1          $ 42,045.10         Interest on the amount diverted by Pauline Hunt from

2                                    Stephen Andersen and Kathleen Brandt (renewed

3                                    10/15/12)

4          $ (259,162.13)      Payment to John Andersen

5          $ 1,033,519.17      **Total**

6

7       c. To John Belcher the principal sum of $88,727.24, calculated as follows:

8          $ 60,783.49         Judgment Creditor John Belcher (Exhibit B)

9          $ 27,943.75         Interest on Judgment to John Belcher

10        $ 88,727.24         **Total**

11

12       d. To Sunny Asch as Successor Trustee of the Andersen Family Trust as fees and costs:

13   $10,000.00.

14

15

16

17   DATED:                                                        *See last page*

18                            HON. WILLIAM BARRY
                             JUDGE OF THE SUPERIOR COURT

19

20

21

22

23

24

25

26

27

28

[Amended Proposed] Order re Final Distribution

Exhibit 3 – Proposed Order to Appear for Examination

**AT-138/EJ-125**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO.: 99300 | FOR COURT USE ONLY |
|---|---|---|

NAME: John A. Belcher
FIRM NAME: Law Offices of John Belcher
STREET ADDRESS: 150 East Colorado Boulevard, Suite 215
CITY: Pasadena   STATE: CA   ZIP CODE: 91105
TELEPHONE NO.: 626-577-5771   FAX NO.: 626-577-7769
E-MAIL ADDRESS: johnbelcher@insuringlaw.com
ATTORNEY FOR (name): Defendant John Belcher

*Received*
*JAN 1 9 2018*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk

PLAINTIFF Taylor Profita and Pauline Hunt
DEFENDANT John Belcher

| APPLICATION AND ORDER FOR APPEARANCE AND EXAMINATION | CASE NUMBER: |
|---|---|
| [X] ENFORCEMENT OF JUDGMENT    [ ] ATTACHMENT (Third Person) | BC471602 |
| [X] Judgment Debtor    [ ] Third Person | |

## ORDER TO APPEAR FOR EXAMINATION

1. TO (name): Taylor Profita

2. YOU ARE ORDERED TO APPEAR personally before this court, or before a referee appointed by the court, to
   a. [X] furnish information to aid in enforcement of a money judgment against you.
   b. [ ] answer concerning property of the judgment debtor in your possession or control or concerning a debt you owe the judgment debtor.
   c. [ ] answer concerning property of the defendant in your possession or control or concerning a debt you owe the defendant that is subject to attachment.

Date: 4/20/2018   Time: 8:30am   Dept. or Div.: 44   Rm.:
Address of court [X] is shown above [ ] is: (Res. ID: 18011)

3. This order may be served by a sheriff, marshal, registered process server, or the following specially appointed person (name):

Date: _____

_____
JUDGE

This order must be served not less than 10 days before the date set for the examination.
## IMPORTANT NOTICES ON REVERSE

### APPLICATION FOR ORDER TO APPEAR FOR EXAMINATION

4. [X] Original judgment creditor   [ ] Assignee of record   [ ] Plaintiff who has a right to attach order
   applies for an order requiring (name):   Taylor Profita
   to appear and furnish information to aid in enforcement of the money judgment or to answer concerning property or debt.

5. The person to be examined is
   a. [X] the judgment debtor.
   b. [ ] a third person (1) who has possession or control of property belonging to the judgment debtor or the defendant or (2) who owes the judgment debtor or the defendant more than $250. An affidavit supporting this application under Code of Civil Procedure section 491.110 or 708.120 is attached.

6. The person to be examined resides or has a place of business in this county or within 150 miles of the place of examination.

7. [ ] This court is **not** the court in which the money judgment is entered or (attachment only) the court that issued the writ of attachment. An affidavit supporting an application under Code of Civil Procedure section 491.150 or 708.160 is attached.

8. [ ] The judgment debtor has been examined within the past 120 days. An affidavit showing good cause for another examination is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 1/15/2018

John Belcher
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

(Continued on reverse)

| Form Adopted for Mandatory Use | APPLICATION AND ORDER FOR | Page 1 of 2 |
|---|---|---|
| Judicial Council of California | APPEARANCE AND EXAMINATION | Code of Civil Procedure, §§ 491.110, 708.110, 708.120, 708.170 |
| AT-138/EJ-125 [Rev. January 1, 2017] | (Attachment—Enforcement of Judgment) | www.courts.ca.gov |

AT-138/EJ-125

### Information for Judgment Creditor Regarding Service

If you want to be able to ask the court to enforce the order on the judgment debtor or any third party, you must have a copy of the order personally served on the judgment debtor by a sheriff, marshal, registered process server, or the person appointed in item 3 of the order at least 10 calendar days before the date of the hearing, and have a proof of service filed with the court.

## IMPORTANT NOTICES ABOUT THE ORDER

### APPEARANCE OF JUDGMENT DEBTOR (ENFORCEMENT OF JUDGMENT)

**NOTICE TO JUDGMENT DEBTOR** If you fail to appear at the time and place specified in this order, you may be subject to arrest and punishment for contempt of court, and the court may make an order requiring you to pay the reasonable attorney fees incurred by the judgment creditor in this proceeding.

### APPEARANCE OF A THIRD PERSON (ENFORCEMENT OF JUDGMENT)

**(1) NOTICE TO PERSON SERVED** If you fail to appear at the time and place specified in this order, you may be subject to arrest and punishment for contempt of court, and the court may make an order requiring you to pay the reasonable attorney fees incurred by the judgment creditor in this proceeding.

**(2) NOTICE TO JUDGMENT DEBTOR** The person in whose favor the judgment was entered in this action claims that the **person to be examined under this order has possession or control of property that is yours or owes you a debt. This property or debt is as follows** *(describe the property or debt)*:

If you claim that all or any portion of this property or debt is exempt from enforcement of the money judgment, you must **file your exemption claim in writing with the court** and have a copy personally served on the judgment creditor not later than three days before the date set for the examination. You must appear at the time and place set for the examination to establish your claim of exemption or your exemption may be waived.

### APPEARANCE OF A THIRD PERSON (ATTACHMENT)

**NOTICE TO PERSON SERVED** If you fail to appear at the time and place specified in this order, you may be subject to arrest and punishment for contempt of court, and the court may make an order requiring you to pay the reasonable attorney fees incurred by the plaintiff in this proceeding.

### APPEARANCE OF A CORPORATION, PARTNERSHIP, ASSOCIATION, TRUST, OR OTHER ORGANIZATION

It is your duty to designate one or more of the following to appear and be examined: officers, directors, managing agents, or other persons who are familiar with your property and debts.

 **Request for Accommodations.** Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least 5 days before your hearing. Contact the clerk's office for *Request for Accommodation* (form MC-410). (Civil Code, § 54.8.)

AT-138/EJ-125 [Rev. January 1, 2017]

**APPLICATION AND ORDER FOR APPEARANCE AND EXAMINATION**
(Attachment—Enforcement of Judgment)

Page 2 of 2

THIS IS YOUR CRS RECEIPT

| INSTRUCTIONS |
|---|
| Please print this receipt and attach it to the corresponding motion/document as the last page. Indicate the Reservation ID on the motion/document face page (see example). The document will not be accepted without this receipt page and the Reservation ID. |

ALIFORNIA, COUNTY OF LOS ANGELES

CASE NO.: BC90000

NOTICE OF MOTION AND MOTION TO COMPEL ANSWERS TO FORM INTERROGATORIES

DATE: January 1, 2020
TIME: 2:30 PM
DEPT:
RES ID: 131112001085

SAMPLE

**RESERVATION INFORMATION**

| | |
|---|---|
| Reservation ID: | **180115281540** |
| Transaction Date: | January 15, 2018 |
| Case Number: | BC471602 |
| Case Title: | TAYLOR PROFITA ET AL VS JOHN A BELCHER ET AL |
| Party: | BELCHER JOHN A. (Defendant & Defendant in Pro Per) |
| Courthouse: | Stanley Mosk Courthouse |
| Department: | 44 |
| Reservation Type: | Application for Order for Appearance and Examination |
| Date: | 4/20/2018 |
| Time: | 08:30 am |

**FEE INFORMATION (Fees are non-refundable)**

First Paper Fee:   Party asserts first paper was previously paid.

| Description | Fee |
|---|---|
| Application for Order for Appearance and Examination | $60.00 |
| Total Fees: | Receipt Number: 1180115K0529 | $60.00 |

**PAYMENT INFORMATION**

| | |
|---|---|
| Name on Credit Card: | John Belcher |
| Credit Card Number: | XXXX-XXXX-XXXX-9536 |

**A COPY OF THIS RECEIPT MUST BE ATTACHED TO THE CORRESPONDING MOTION/DOCUMENT AS THE LAST PAGE AND THE RESERVATION ID INDICATED ON THE MOTION/DOCUMENT FACE PAGE.**

THIS IS YOUR CRS RECEIPT

| INSTRUCTIONS |
|---|
| Please print this receipt and attach it to the corresponding motion/document as the last page. Indicate the Reservation ID on the motion/document face page (see example). The document will not be accepted without this receipt page and the Reservation ID. |

ALIFORNIA, COUNTY OF LOS ANGELES

CASE NO.: BC00000

NOTICE OF MOTION AND MOTION
TO COMPEL ANSWERS TO FORM
INTERROGATORIES

DATE: January 11 2020
TIME: 2:30 pm
DEPT: M
CRS ID: 131112001085

## RESERVATION INFORMATION

| | |
|---|---|
| **Reservation ID:** | **180115281540** |
| **Transaction Date:** | January 15, 2018 |
| **Case Number:** | BC471602 |
| **Case Title:** | TAYLOR PROFITA ET AL VS JOHN A BELCHER ET AL |
| **Party:** | BELCHER JOHN A. (Defendant & Defendant in Pro Per) |
| **Courthouse:** | Stanley Mosk Courthouse |
| **Department:** | 44 |
| **Reservation Type:** | Application for Order for Appearance and Examination |
| **Date:** | 4/20/2018 |
| **Time:** | 08:30 am |

## FEE INFORMATION (Fees are non-refundable)

**First Paper Fee:** Party asserts first paper was previously paid.

| Description | Fee |
|---|---|
| Application for Order for Appearance and Examination | $60.00 |
| **Total Fees:** | Receipt Number: 1180115K0529 | **$60.00** |

## PAYMENT INFORMATION

| | |
|---|---|
| **Name on Credit Card:** | John Belcher |
| **Credit Card Number:** | XXXX-XXXX-XXXX-9536 |

### A COPY OF THIS RECEIPT MUST BE ATTACHED TO THE CORRESPONDING MOTION/DOCUMENT AS THE LAST PAGE AND THE RESERVATION ID INDICATED ON THE MOTION/DOCUMENT FACE PAGE.

## National Process

| | |
|---|---|
| **From:** | DONOTREPLY-CRS@lacourt.org |
| **Sent:** | Wednesday, January 24, 2018 4:27 PM |
| **To:** | johnbelcher@insuringlaw.com |
| **Subject:** | Confirmation: BC471602-180115281540 |

Your motion has been received and processed in the courtroom. As a result, the following reservation has been confirmed:

| | |
|---|---|
| Reservation ID: | 180115281540 |
| Case Number: | BC471602 |
| Case Title: | TAYLOR PROFITA ET AL VS JOHN A BELCHER ET AL |
| Party: | BELCHER JOHN A. (Defendant & Defendant in Pro Per) |
| Courthouse: | Stanley Mosk Courthouse |
| Dept: | 44 View Courtroom Information. |
| Reservation Type: | **Application for Order for Appearance and Examination** |
| Date: | 4/20/2018 |
| Time: | 08:30 am |

Please do not reply to this email. Replies to this email will not be read.

1

Exhibit 4 - Order Granting Motion for Sanctions Against Profita

1037777

1  LAW OFFICES OF JOHN A. BELCHER
   JOHN A. BELCHER (SBN 99300)
2  NICHOLAS W. SONG (SBN 217070)
   150 East Colorado Boulevard, Suite 215
3  Pasadena, California 91105
   (626) 577-5771
4  (626) 577-7769 Facsimile

5  Attorneys for Stephen Andersen and Kathleen Brandt

6

7                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                          FOR THE COUNTY OF LOS ANGELES

9

10  IN RE                                CASE NO. BP099392
                                         Consolidated with BP110256
11
    THE ANDERSEN FAMILY TRUST            [PROPOSED] ORDER GRANTING
12  DATED JULY 16, 1992 AS               STEPHEN ANDERSEN'S AND
    AMENDED.                             KATHLEEN BRANDT'S MOTION FOR
13                                       SANCTIONS AGAINST TAYLOR
                                         PROFITA
14
                                         DATE:    December 4, 2017
15                                       TIME:    10:00 a.m.
                                         PLACE:   Dept. 67
16
                                         Hon. William Barry
17

18

19

20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────
                  [PROPOSED] Order re Sanctions Against Taylor Profita

FILED
Superior Court of California
County of Los Angeles

DEC 11 2017

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
   Viola Square

1    Petitioners Stephen Andersen and Kathleen Brandt's Motion for sanctions under CCP

2  Section 128.5 against Taylor Profita came for hearing on December 4, 2017 at 10:00 a.m. John

3  Belcher appeared for Stephen Andersen and Kathleen Brandt. Taylor Profita appeared at the

4  hearing.

5    The Court, having considered the documents before it, having heard the arguments of

6  counsel, and being fully advised, finds as follows:

7    (1) Respondent Taylor Profita's motion for CCP Section 128 relief was frivolous and done

8  without standing. The motion violated CCP 128.5. Taylor Profita lacks standing to act as counsel

9  for Pauline Hunt, who is currently represented by counsel. Those counsel have filed two notices of

10  appeal.

11    (2) Petitioners Stephen Andersen and Kathleen Brandt have incurred reasonable attorneys

12  fees in the amount of $3500 in opposing the frivolous motion.

13

14    IT IS ORDERED that the motion be and it hereby is GRANTED and Taylor Profita is

15  ordered to pay sanctions to Stephen Andersen and Kathleen Brandt in the amount of $3500

16  forthwith.

17

18  DATED:  12/11/17

Hon. William Barry
Judge of the Superior Court

PROOF OF SERVICE
C.C.P. § 1013a, C.R.C. 2003(3) 2005(I)

STATE OF CALIFORNIA     ] ss

COUNTY OF LOS ANGELES    ]

      I am employed in the County of Los Angeles, State of California.
      I am over the age of 18 and not a party to the within action; my business address is 150 East Colorado Boulevard, Suite 215, Pasadena, California 91105

      On December 4, 2017 I caused to be served the foregoing document(s) described as:

      CASE NO.: BP099392 -[PROPOSED] ORDER GRANTING STEPHEN ANDERSEN'S AND KATHLEEN BRANDT'S MOTION FOR SANCTIONS AGAINST TAYLOR PROFITA

      By placing a true copy thereof enclosed in a sealed envelope addressed as follows:

      SEE ATTACHED SERVICE LIST

☐     by overnight delivery via Federal Express pursuant to Code of Civil Procedure §1013.

☐     by FAX. The document was transmitted by facsimile transmission and the transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

☐     by personal delivery.

☐     by electronic service

☒     by mail as follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒     (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐     (FEDERAL) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

      Executed on December 4, 2017 at Pasadena, California.

By _____
        Priyanka Samra

Stephen Andersen, et al. v. Pauline Hunt, et al.
Los Angeles Superior Court Case No.: BP099392

## SERVICE LIST

| | |
|---|---|
| **Attorney for PAULINE HUNT as Personal Representative of the estate of Wayne Andersen; PAULINE HUNT as Trustee of the Wayne Andersen Trust, formerly the Andersen Family Living Trust** | Richard A. Pech<br>Law Offices of Richard A. Pech<br>171 Pier Avenue, Suite 327<br>Santa Monica, California 90405<br>(310) 277-7324<br>facsimile (310) 277-7924 |
| **Attorney for PAULINE HUNT as an Individual and TAYLOR PROFITA as an Individual** | Marc B. Hankin<br>Law Offices of Marc B. Hankin<br>433 N. Camden Dr., 6th Floor<br>P.O. Box 3668<br>Beverly Hills, California 90212<br>(310) 552-3005<br>facsimile (310) 552-3009 |
| **Attorney for JOHN ANDERSEN, a Minor and TINA NEGRITTO, Guardian ad Litem for John Andersen, a Minor** | James D. Murray<br>James D. Murray, Attorney at Law<br>40780 Treasure City Lane<br>Indio, CA 92203-3858 |
| **Attorney for SUNNY ASCH, Successor Trustee of the Andersen Family Trust** | Lynard C. Hinojosa<br>Hinojosa & Forer LLP<br>2215 Colby Avenue<br>Los Angeles, California 90064-1504<br>(310) 473-7000<br>facsimile (310) 473-1730 |
| **Sunny Charla Asch<br>Successor Trustee of the<br>Andersen Family Trust<br>PO Box** | Sunny Charla Asch<br>PO Box 457<br>La Canada, Ca 91012 |
| **Tina Negritto<br>Guardian *ad Litem*<br>of John Andersen, a Minor** | Tina Negritto<br>666 Greendale Lane<br>Pomona, CA 91767 |

Exhibit 4 – Profita's Request for Judicial Notice Pertaining to the Grant Assignment of August, 2008 w/Exhibits

Electronically FILED by Superior Court of California, County of Los Angeles 2/7/2018 8:49 PM Sherri R. Carter, Executive Officer/Clerk, By J. Johnson, Deputy Clerk

Case 2:18-cv-00286-PA-DFM   Document 17   Filed 02/28/18   Page 81 of 84   Page ID #:578

1    Taylor Profita, *real party in interest, Pro Per*

2    8501 E Alameda Ave
3    Denver, CO 80230

4    Phone: 818-523-9807
     Fax: 818-698-0487
5    tprofita@gmail.com

6

7                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                        FOR THE COUNTY OF LOS ANGELES

9    IN RE                                    Case No.: BP099392
                                              Consolidated with BP110256
10        THE ANDERSEN FAMILY TRUST
          DATED JULY 16, 1993 AS AMENDED
11                                            REQUEST FOR JUDICIAL NOTICE

12

13          Petitioner and Beneficiary Taylor Profita respectfully requests that, at the hearing of February

14   14th, 2018, at 10:00am in Department 67, this court take Judicial Notice that the Grant and Assignment

15   of Interest of Pauline Hunt to Taylor Profita, signed on August 7, 2008, was located after being misfiled

16   and subsequently lost several years ago.  This Grant and Assignment is attached to this request for

17   Judicial Notice.

18          Additionally, Profita would request this court address the prior request for Judicial Notice filed

19   by Profita with this court on January 27th, 2018, specifically the Request for Judicial Notice Pertaining

20   to Mr. Belcher's attempt to recover on the Judgment in the proceedings of BC471602 through a motion

21   and order for Profita to appear for examination, while having known that this court has already ordered

22   relief satisfied on that very judgment through the order of distribution from the trust.

23

24   Respectfully Submitted, February 7th, 2018

25                                    /s/ Taylor Profita
                                      Taylor Profita
26

27

28

                        REQUEST FOR JUDICIAL NOTICE - 1

Exhibit 1 – August 7th, 2008 Grant and Assignment of Interest

## GRANT AND ASSIGNMENT

Pauline Strong Hunt hereby grants, assigns, transfers, deeds and conveys all of the Settlor's right, title and interest in and to any and all interests in certain property (hereinafter "Transfer Property") to Taylor Profita as the Trustee of the Pauline Strong Hunt Family Trust (hereinafter "the Trust"), as amended.

The term "Transfer Property" means and includes any and all interests of Settlor in real or personal property, including but not limited to:

1. Any and all causes of action and/or claims that Settlor may have against the probate estate of Wayne Andersen ("Decedent"), and/or any trust with respect to which Decedent is or was a settlor, and/or any trust funded in whole or in part with assets included in whole or in part in the gross estate of Decedent;

2. Any interest Settlor may have in any property or the fruits of any property which was included in whole or in part in the gross estate of Decedent;

3. Any and all causes of action and/or claims that Settlor may have against Stephen Andersen, Kathleen Brandt, John Andersen, Tina Negritto, John Belcher, Nicholas Song, and/or against any or all of them, and including any causes of action that Settlor may have against any subset(s) of the aforementioned people, and/or any trusts in which they or any of them have any interest;

**However**, the term "Transfer Property" does not include any claim for punitive damages.

Date:  August 7, 2008

SETTLOR:  Pauline Strong Hunt

SETTLOR:  Pauline Strong Hunt

By: _____
Pauline Strong Hunt

By: _____
Taylor Profita
as Attorney in fact for
Pauline Strong Hunt

## TRUSTEE'S ACKNOWLEDGMENT AND AGREEMENT

Trustee Taylor Profita acknowledges Trustee's receipt as Trustee, of the Trust Estate, as defined in this Trust Agreement, of the Trust, as dated above, and agrees to serve as Trustee and to be bound by all its provisions, which purport to be binding upon the Trustee.

Dated: August 7, 2008.

_____
Taylor Profita, Trustee

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _____ Los Angeles _____ }

On August 7th, 2008 before me, _____ Francisco A. Santaella, Notary Public
    Date                  Here Insert Name and Title of the Officer

personally appeared _Pauline S. Hunt and Taylor Profita_
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                      Signature of Notary Public

FRANCISCO A. SANTAELLA
COMM. #1751373
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires July 14, 2011

Place Notary Seal Above

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Grant and Assignment_

Document Date: _8/7/2008_        Number of Pages: _1_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Pauline S. Hunt_
- ☒ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _Taylor Profita_
- ☒ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827